UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER J. LOGAN, JR. and<br>THE DELTA ALLIANCE, LLC<br><br>          Plaintiffs,<br><br>          v.<br><br>SALEM BAPTIST CHURCH OF<br>JENKINTOWN,<br>EASTBURN & GRAY, P.C.,<br>JANE E. LEOPOLD-LEVENTHAL,<br>MARC D. JONAS,<br>MARY J. ANDERS,<br>RISA VETRI FERMAN,<br><br>          Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:   Civil Action No.10-CV-0144<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## FIRST AMENDED COMPLAINT

Plaintiffs, Walter J. Logan, Jr. ("Mr. Logan") and The Delta Alliance, LLC ("Delta Alliance") (collectively, "Plaintiffs"), by and through their undersigned attorneys, file the following Complaint against defendants, Salem Baptist Church of Jenkintown ("Salem"), Eastburn & Gray, P.C. ("Eastburn & Gray"), Jane E. Leopold-Leventhal ("Ms. Leopold-Leventhal"), Marc D. Jonas ("Mr. Jonas"), Mary J. Anders ("Ms. Anders"), and Risa Vetri Ferman ("Ms. Ferman") and in support thereof avers as follows:

## NATURE OF ACTION

1.     This case arises out of false criminal charges brought against Mr. Logan for the purposes of pressuring Mr. Logan into compromising the civil breach of contract claims his company, the Delta Organization, Inc. ("Delta") brought against Salem.  This Complaint also chronicles the abuse of state power and privileged positions by defendants to exact revenge against Mr. Logan for asserting these claims.  Salem, along with its attorneys, Mr. Jonas and Ms. Leopold-Leventhal of Eastburn & Gray, exploited their personal relationships with members of the Montgomery County District Attorney's Office County Detective Bureau to bring criminal charges against Mr. Logan and one of his employees based on nothing more than a contractual dispute between Delta and Salem.   Members of Salem also used their positions with Montgomery County to engineer criminal charges against Mr. Logan without probable cause. After charges were filed and Mr. Logan was arrested, the District Attorney of Montgomery County, Risa Vetri Ferman, continued the canard by making false and defamatory statements to the press that have had a devastating effect on Mr. Logan personally and professionally.  Then, even after it was conclusively established in a civil action that Salem, not Delta, had breached the contract that underlay the relationship between Delta and Salem, and therefore the criminal charges against Mr. Logan had no basis in fact, the Montgomery County D.A. refused to dismiss the charges for an additional seven and a half (7½) months.

## JURISDICTION

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 with regard to Plaintiff's claims under 42 U.S.C. § 1983 and has supplementary jurisdiction over the remainder of Plaintiff's claims pursuant to 28 U.S.C. § 1367.

## VENUE

3.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because all defendants reside within the Eastern District of Pennsylvania and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

4.     Plaintiff, Mr. Logan, is an individual who resides at 410 Woodland Circle, Radnor, Pennsylvania, 19087.

5.     Plaintiff, Delta Alliance, is a Pennsylvania limited liability company with a principal place of business located at 99 Bridge Street, Suite 400, Phoenixville, Pennsylvania, 19460.

6.     Defendant, Salem, is a Pennsylvania non-profit corporation with a principal place of business located at 610 Summit Ave, Jenkintown, Pennsylvania, 19046.  Salem is a politically active and politically influential church, whose members include Oscar P. Vance, Jr., the Chief County Detective of Montgomery County and Garret D. Page, who was formerly Treasurer of Montgomery County and who currently is a judge on the Court of Common Pleas in Montgomery County.  Mr. Page is a member of Salem's Steering Committee and had an important role in all decisions made by Salem at all times relevant to this action.

7.     Defendant, Eastburn & Gray, P.C., is a Pennsylvania professional corporation with a principal place of business located at 60 E. Court St., Doylestown, Pennsylvania, 18901. Eastburn & Gray has offices in Blue Bell, Pennsylvania and, upon information and belief, has had past dealings with the former Treasurer of Montgomery County, Garret D. Page.

8.     Defendant, Ms. Leopold-Leventhal, is an individual with a place of business located at 60 E. Court St., Doylestown, Pennsylvania, 18901.  Ms. Leopold-Leventhal is a shareholder of

Eastburn & Gray and served as Salem's attorney in its litigation with Mr. Logan's company, Delta.

9.    At all material times hereto, Ms. Leopold-Leventhal was acting as an agent and/or employee of Eastburn & Gray.

10.    Defendant, Mr. Jonas, is an individual with a place of business at 775 Penllyn Blue Bell Pike, Blue Bell, Pennsylvania 19422.  Mr. Jonas is the Solicitor to Narberth Borough, Montgomery County, and is the Solicitor for the Zoning Hearing Boards of Towamencin and Lower Salford Townships in Montgomery County.  Additionally, Mr. Jonas is a member of the Montgomery Bar Association and chairs the Montgomery Bar Association Real Estate Committee.  Mr. Jonas served as an attorney for Salem.

11.    At all material times hereto, Mr. Jonas was acting as an agent and/or employee of Eastburn & Gray.

12.    Defendant, Ms. Anders, is an individual with a place of business at the One Montgomery Plaza, 5th Floor, Norristown, Pennsylvania 19404.  Ms. Anders is a detective with the Montgomery County District Attorney's Office and reports to, among others, Oscar P. Vance, Jr., the Chief of Detectives and a member of Salem.

13.    Defendant, Ms. Ferman, is an individual with a place of business at the Montgomery County Courthouse, Main and Swede Streets, 4th Floor, Norristown, Pennsylvania 19404.  Ms. Ferman is the Montgomery County District Attorney.  In her capacity as District Attorney, Ms. Ferman has frequent interaction with Mr. Vance.

14.    Defendant, Montgomery County District Attorneys' Office is a department of Montgomery County, a political subdivision of the Commonwealth of Pennsylvania, located at

4

the Montgomery County Courthouse, Main and Swede Streets, 4th Floor, Norristown, Pennsylvania 19404.

15. At all material times hereto, Ms. Anders and Ms. Ferman were acting as agents and/or employees of the Montgomery County D.A.

16. Defendant, Montgomery County, is a political subdivision of the Commonwealth of Pennsylvania, with its principal place of business located at Montgomery County Courthouse, Main and Swede Streets, Norristown, Pennsylvania 19404. Mr. Garret D. Page was, at all relevant times, Treasurer of Montgomery County and politically active in Republican Party politics.

## FACTUAL ALLEGATIONS

17. On October 20, 2003, Salem entered into a contract with Delta (the "Contract") pursuant to which Delta agreed to perform renovations on an existing building and to construct a new building for Salem in Jenkintown, Pennsylvania (the "Project"). A true and correct copy of the Contract is attached hereto as Exhibit "A."

18. Salem's actions concerning the Project were controlled by a steering committee, including *inter alia* individual members Anita Connor, Garret D. Page, and Millie Stephens (collectively the "Steering Committee"). At least one member of the Steering Committee is particularly influential within Montgomery County politics. At the time of the Project and during the subsequent litigation, Mr. Page served as the Treasurer of Montgomery County. Recently, Mr. Page was elected and sworn in as a judge on the bench of the Montgomery County Court of Common Pleas.

19. Under the terms of the Contract, Delta served as an at-risk construction manager, entering into multiple contracts with subcontractors in order to provide all the necessary labor

and materials to construct two buildings, a Family Life Center and a Multi-Purpose Building, in accordance with the architect's plans.

20. In addition to providing the labor and services of subcontractors, Delta managed the construction of the Project and scheduled and coordinated the work of the trades.

21. Pursuant to the Contract, Delta agreed to perform the work for a guaranteed maximum price ("GMP") to be established later by amendment.

22. This GMP was established on December 12, 2005 in the amount of $3,174,411.00 and Delta's general conditions costs, the amount that it costs a construction manager to maintain a presence on site, were based on the projection that the Project would last 12 months. *See* Amendment No. 1.

23. As written, this GMP Contract ensured that the contractor could not overcharge the owner, because (1) the contractor could not charge more than the total agreed amount unless the parties came to a mutual agreement during the course of the Project to increase the price, (2) the contractor could only bill for work in place, which would be verified prior to payment by the architect, an agent of the owner, (3) Citizens Bank, which made payments to Salem based on work in place pursuant to the construction loan, independently verified that the work was progressing as claimed, and (4) the owner is entitled to a full audit of all the contractor's financial information before making final payment.

24. On October 5, 2005, Delta was given a notice to proceed with its work on the Project after receiving a demolition permit from the Borough of Jenkintown (the "Borough"). Delta expected that the Project drawings would be finalized and approved by the Borough so that construction could begin when the demolition phase ended.

25.   However, when demolition work was completed on or about November 4, 2005, Delta was unable to begin the construction phase of its work until January 23, 2006, due to Salem's failure to provide the Borough with Project plans that could be approved and permitted.

26.   Salem's architect, Walter Livingston, failed to produce plans and specifications that met the applicable building codes and were of sufficient detail and quality for approval by the Borough.

27.   Salem terminated Mr. Livingston in January of 2006 and hired Kramer/Marks Architects as the replacement architect.

28.   In the same time period that Salem sought Borough approval (but unsuccessfully) of the plans, Delta had planned to start construction work on the Project.  However, because of the absence of approved plans, the termination of Mr. Livingston, and the need to acquaint Kramer/Marks with the Project, Delta was unable to move forward with any meaningful work on the Project other than some site work, excavation and some foundation and masonry work that would not be affected by the change in architects.

29.   Notwithstanding the minimal available work, Salem required Delta to maintain a presence on site and incur all the expenses associated with that presence.  The submission of incomplete and deficient drawings prevented the Borough from issuing a full and complete building permit for the entire Project until December 14, 2006, approximately fifteen (15) months after Delta first established its presence on site, and three (3) months beyond the original Contract completion date.

30.   The permitting issues caused by Salem and its architect's failure to prepare a complete set of acceptable drawings for review by the Borough, was the first of multiple delays on the Project caused by Salem.

7

31.   Additional delays to the Project were caused by Salem's failure to provide an adequate survey of existing structural steel conditions, which prevented Delta from erecting the structural steel of the Family Life Center and performing subsequent work on the structure.

32.   Additionally, deficiencies in the Project's design relating to the positioning of the transformer in a location that was unacceptable to PECO caused further delays as the transformer location was redesigned.   The delays were exacerbated by Salem's indecision regarding the new transformer location, which prevented the redesign and installation of the electrical system and affected Delta's ability to perform other aspects of the construction.

33.   Salem also demonstrated its indecision in the spring of 2007, when it required multiple revisions to the teledata system in the Family Life Center.   This review and redesign process prevented Delta and its subcontractors from performing the rough-in work for the phone outlets, floor boxes, base outlets, ceiling outlets and service outlets for the computer lab, until the locations of the teledata system were finalized and delayed subsequent Project activities, such as the installation of drywall.

34.   In total, delays caused by Salem resulted in Delta's presence on site for approximately twenty-one (21) months, nine (9) more months than anticipated.

35.   As a result of Delta's extended and unanticipated presence on site due to the actions or failures to act of Salem, Delta incurred significant additional expenses associated with the maintenance of a presence on a construction site (the "General Conditions" expenses).   The Contract provides that Delta can recover its General Conditions expenses on a reimbursable dollar-for-dollar basis at agreed rates. *See* Exhibit A at Schedule "B."

36.   On June 8, 2007, in a request for disbursement on the Citizens Bank construction loan, Salem certified that Delta had performed all of the construction work in accordance with

the plans and no event or condition had occurred that would constitute a default by Delta under the Contract.

37.    On June 18, 2007, Walt Logan wrote a letter to Salem stating that a balance of $213,110.00 was outstanding and that Salem was in default of the Contract for failing to make timely payments.

38.    Instead of making such payment, Mr. Jonas, on behalf of Salem, sent a letter to Mr. Logan dated June 27, 2007 that terminated Delta from the Project without providing prior notice or opportunity to cure, which were required by the Contract.

39.    Salem's failure to comply with the Contract's termination procedures and lack of an adequate basis for the termination constituted a wrongful termination of Delta, in breach of the Contract.

40.    Mr. Logan wrote to Mr. Jonas and informed him that the termination was wrongful. However, Mr. Jonas wrote back indicating that he did not believe that the termination was wrongful and reaffirmed that Delta had been terminated for the reasons identified in his June 27, 2007 letter.

41.    After the termination and pursuant to the terms of the Contract, Delta initiated the dispute resolution procedures in an attempt to recover the money that Salem failed to pay for work Delta performed in the months preceding its termination.

42.    Pursuant to the dispute resolution provision of the Contract, Delta filed a breach of contract arbitration claim against Salem with the American Arbitration Association on July 30, 2007 seeking damages resulting from Salem's non-payment and the wrongful termination of the Contract (the "Arbitration").

43.   Salem asserted counterclaims against Delta sounding in breach of contract and fraud, alleging that Delta had not paid its subcontractors for their work but instead misappropriated payments that it received from Salem.

44.   Salem's allegations in this respect were false in that Delta had paid its subcontractors approximately $1.3 million during the course of the Project and had applied all of the money paid by Salem to pay for the Project work, including subcontractor payments and its own General Conditions expenses.

45.   In fact, Delta's ability to make payments to its subcontractors was not materially foreclosed until Salem began to withhold payments to Delta on the Project.

46.   Delta did not receive a payment from Salem from March 1, 2007 until May 18, 2007, a more than two and a half month period of time.  Additionally, Delta's applications for payment that included the cost of the work of several subcontractors from April through June, 2007 were not paid by Salem prior to Delta's termination.

47.   Due to the financial problems and delays associated with the Project, members of the Steering Committee, including Garret D. Page who was at that time the Treasurer of Montgomery County, faced public embarrassment which could impact their standing with the church and their community.

48.   Therefore, after Delta filed its civil Arbitration claims, in order to deflect the blame from members of the Steering Committee for the failure of the Project, Salem began a campaign to smear Mr. Logan and the Delta Organization all in an attempt to publicly scapegoat Mr. Logan and Delta for the failures and incompetence of Salem's Steering Committee.

A.      **The Effort to Destroy Mr. Logan and Delta Through Malicious Prosecution**

49.     Eastburn & Gray originally was engaged by Salem to assist the church with certain land use and zoning issues that arose out of the plans to construct the Project.

50.     Specifically, Salem hired Marc Jonas to represent it before the Borough of Jenkintown for the purpose of obtaining all necessary land use approvals.

51.     Once Delta commenced the Arbitration, Salem engaged Mr. Jonas' partner, Jane Leopold-Leventhal, to represent it in the Arbitration.

52.     Upon information and belief, in or around the summer of 2008, Ms. Leopold-Leventhal along with members of the Steering Committee including then Treasurer of Montgomery County, Garret D. Page, met with detectives of the Montgomery County Detective Bureau including Mary J. Anders and/or Oscar P. Vance, Jr. to describe the allegations that Salem had asserted against Delta in the context of the Arbitration.   Mr. Vance is the Chief County Detective of Montgomery County and is an active member of Salem.

53.     Due to the political influence of members of Salem and its attorneys, and the personal relationships between members of Salem, Eastburn & Gray, and members of the Montgomery County District Attorney's Office, Ms. Anders purportedly undertook a criminal investigation of Delta and Mr. Logan's actions with respect to the performance of the Contract.

54.     Ms. Anders' initial investigation was based solely on the accusations of Salem and its attorneys, and select documents provided by Ms. Leopold-Leventhal.

55.     On July 17, 2008, Ms. Anders signed an Affidavit of Probable Cause accusing Mr. Logan and his employee, Lester Mack ("Mr. Mack") of wrongdoing in order to obtain a subpoena to gain access to Delta's corporate financial information and records retained by its

bank, PNC Bank.  A true and correct copy of this July 17, 2008 Affidavit of Probable Cause is attached hereto as Exhibit "B."

56.   Delta's attorney sent several letters to Ms. Anders asking for an opportunity to meet with her to explain what occurred on the Project and to explain the terms of the Contract to establish that Delta's actions were consistent with the parties' agreement and no crime had been committed.

57.   Ms. Anders initially refused to meet with Mr. Logan and Mr. Mack.

58.   Despite not having the benefit of Mr. Logan and Mr. Mack's input, Ms. Anders concluded that crimes had been committed during the course of Delta's performance of the Contract.  Specifically, Ms. Anders asserted that Mr. Logan and Mr. Mack had committed theft by unlawful taking, theft by deception, theft by failure to make required disposition, deceptive business practices, misapplication of entrusted property, and securing execution of documents by deception (collectively the "Accused Crimes").

59.   Ms. Anders' conclusions were based simply on the erroneous allegations of the Steering Committee members and Ms. Leopold-Leventhal, and were reached without demonstrating an understanding of Delta's obligations under the Contract, the cause of delays on the Project, or construction industry practices and the consequences of delays caused by project owners and their architects.  In effect, Salem and Ms. Leopold-Leventhal successfully turned a garden-variety contract dispute into a criminal case.

60.   Based on the influence of Salem and Eastburn & Gray within Montgomery County and the District Attorney's Office County Detective Bureau, Ms. Anders issued a second Affidavit of Probable Cause on January 13, 2009, asserting that Mr. Logan and Mr. Mack had committed theft by unlawful taking, theft by deception, theft by failure to make required

disposition, deceptive business practices, misapplication of entrusted property, and securing execution of documents by deception. A true and correct copy of the January 13, 2009 Affidavit of Probable Cause is attached hereto as Exhibit "C."

61. In issuing the Affidavit of Probable Cause, Ms. Anders recklessly and/or willfully misread and misinterpreted the language of the Contract to come to the conclusion that Delta failed to meet its contractual obligations and then misapplied the statutory definitions of the aforementioned crimes to equate Delta's alleged breaches of the Contract with crimes allegedly committed by Mr. Logan.

62. Members of Salem's Steering Committee and Ms. Leopold-Leventhal worked closely with the detectives to ensure that criminal charges were filed.

63. Upon information and belief, Ms. Leopold-Leventhal drafted large portions of the Affidavits of Probable Cause upon which the criminal charges against Mr. Logan were based.

64. Upon information and belief, Mr. Vance and Ms. Anders were motivated by personal relationships with Salem and/or Ms. Leopold-Leventhal when they decided to pursue arrest warrants for Mr. Logan and Mr. Mack.

65. Upon information and belief, Salem and Ms. Leopold-Leventhal, working with Mr. Vance and Ms. Anders, orchestrated the charges against Mr. Logan in order to pressure him to compromise Delta's position in the Arbitration and to punish him for the failure of the Project and his subsequent initiation of claims against Salem.

66. Based on the Affidavit of Probable Cause, a Criminal Complaint was filed on January 13, 2009 and an arrest warrant for Mr. Logan was issued. A true and correct copy of the Criminal Complaint is attached hereto as Exhibit "D."

67.    Mr. Logan voluntarily attended his arraignment on January 14, 2009 and was released on a $50,000.00 unsecured bond.

68.    Upon information and belief, Salem and/or Ms. Leopold-Leventhal contacted members of the press to inform them of Mr. Logan's arraignment and to encourage their attendance.

**B.    Publication of False and Defamatory Statements**

69.    During the press conference following the arraignment, a press conference that was clearly pre-arranged for the purpose of publicly embarrassing Mr. Logan, Ms. Ferman made the following false and defamatory statement: Mr. Logan "was entrusted by the church with overseeing a major construction project. He took money from them; he hired people to do work; and then he ripped off his subcontractors, never paid them, and pocketed the money for himself." WKYW Newsradio further disseminated this statement and posted the story of the charges against Mr. Logan, including the statement made by Ms. Ferman on its website. A true and correct copy of the January 14, 2009 article is attached hereto as Exhibit "E."

70.    Ms. Ferman also appeared on television, broadcast by NBC 10 Philadelphia, and while referring to Mr. Logan stated that "for someone to steal from a church is really very low," and "it turned out he pocketed money himself, didn't pay the subcontractors, and didn't do what needed to be done." While this video clip could not be attached to this Complaint as an exhibit, it can be viewed at http://www.nbcphiladelphia.com/news/local-beat/Who-Would-Steal-from-a-Church.html.

71.    The Philadelphia Tribune, on Friday January 16, 2009 published an article containing Ms. Ferman's false statements that: "Unfortunately, we see a lot of cases involving contractors ripping off consumers and while we take all these cases seriously, it is particularly

14

despicable and outrageous to steal from a church….Construction projects are an enormous amount of work for a church and it is always extremely difficult for them to raise funds for them. Mr. Logan was entrusted by the church with overseeing a major construction project and he took money from them and he hired people to do work. Then he ripped off his subcontractors, never paid them and pocketed the money for himself." A true and correct copy of the January 16, 2009 Philadelphia Tribune article is attached hereto as Exhibit "F."

72.   As a result of the false accusations of Salem and Ms. Leopold-Leventhal, and based on Ms. Ferman's statements to the press, other news organizations ran stories regarding Mr. Logan's arrest.

73.   On Friday, January 16, 2009, the Philadelphia Inquirer included an article entitled "Contractor charged with defrauding church." *See* a true and correct copy of this article attached hereto as Exhibit "G."

74.   On Monday, January 19, 2009, Norristown's Times Herald contained an article entitled "Construction contractor accused of deceptive practices." *See* a true and correct copy of this article attached hereto as Exhibit "H."

75.   To this day, even after all criminal charges against Mr. Logan have been dismissed, a simple Google search using the terms "Walter," "Logan," and "Delta" prompts an article entitled "Who Would Steal From a Church?" as the first result. *See* a true and correct copy of a Google search, attached hereto as Exhibit "I."

76.   Notably, Ms. Ferman did not merely announce that Mr. Logan had been accused of crimes with the caveat that he was innocent until proven guilty. Instead, Ms. Ferman passed judgment on Mr. Logan and made clear statements indicating that Mr. Logan had in fact committed crimes against Salem.

77.   Immediately following the arrest and defamatory statements, Mr. Logan and Delta became toxic.  The negative publicity associated with Mr. Logan's arrest immediately affected his business, as companies did not want to conduct business with Mr. Logan in light of the fact that Ms. Ferman, a respected member of the Montgomery County political community, stated that he committed the "low" and "despicable" acts of stealing money from a church.

### C.      Harassment of Mr. Logan and Delta Through Civil Procedures

78.   On or about October 17, 2008, while the arbitration proceedings were pending, Ms. Leopold-Leventhal filed a Petition for Special and Preliminary Injunctive Relief (the "Petition") with the Court of Common Pleas of Montgomery County seeking an injunction that would freeze all assets of Mr. Logan and Delta Alliance until the disposition of the Arbitration and would require Delta to place in escrow the $1.5 million that Salem claimed in damages.

79.   Despite the fact that the parties agreed to resolve their dispute through AAA arbitration and the fact that these arbitration proceedings were progressing, Ms. Leopold-Leventhal took steps to file the Petition with the Montgomery County Court of Common Pleas.

80.   Ms. Leopold-Leventhal presented the Petition to the Court *ex parte* and received an order signed by Judge Rossanese temporarily freezing Mr. Logan and Delta Alliance's accounts prior to a full preliminary injunction hearing.

81.   The Petition had no basis in law and was intended merely to harass and maliciously injure Mr. Logan and Delta Alliance by freezing their assets and preventing Mr. Logan and Delta Alliance from conducting any business or even paying employees their salaries.

82.   The Petition was filed in bad faith and was based on false representations that, *inter alia*, an injunction was required because of the imminence of Mr. Logan and/or Delta Alliance's dissipation of their assets.

16

83.   Counsel for Mr. Logan and Delta Alliance wrote to Ms. Leopold-Leventhal, indicated that her actions were in violation of Pennsylvania's Dragonetti Act and requested that she withdraw the Petition.  A true and correct copy of the Dragonetti letter is attached hereto as Exhibit "J."  Ms. Leopold-Leventhal refused.

84.   On October 28, 2008 a preliminary injunction hearing was held before Judge Drayer.  During this hearing, Judge Drayer found no basis for a preliminary injunction because there was no immediacy that would require the imposition of such an injunction and Salem could not establish that it had a substantial likelihood of success on the merits.  Accordingly, Judge Drayer terminated Judge Rossanese's order and effectively dismissed the Petition.

**D.**   **The Resolution of Delta's Breach of Contract Claims Through Arbitration**

85.   The timing of the filing of criminal charges against Mr. Logan corresponded with Salem's intent to take whatever actions were necessary to postpone the administration of justice through Arbitration.  Although Ms. Anders originally began her investigation in June, 2008, she waited until January 13, 2009 to seek the arrest of Mr. Logan and Mr. Mack.  This time period coincided (not coincidentally) with the date that the AAA Arbitration was scheduled to commence on February 2, 2009; the purpose being to pressure Delta into dropping the civil suit.

86.   Salem did not want to proceed with the AAA Arbitration because it feared that Delta would win.  Accordingly, Salem used its influence with the Montgomery County District Attorneys' Office Detective Bureau to ensure that criminal charges were brought against Mr. Logan and Mr. Mack at or around the time the Arbitration hearings were scheduled in order to postpone the hearings and to put pressure on Delta to compromise its claims.

87.   Indeed, Ms. Leopold-Leventhal petitioned the AAA arbitrator to postpone the Arbitration hearings based on Mr. Mack's unavailability due to his incarceration, all of which

had been engineered by Ms. Leopold-Leventhal and Salem.  The AAA arbitrator refused to postpone the arbitration indefinitely.

88.   After the AAA arbitrator refused to postpone the hearings, Ms. Leopold-Leventhal and Eastburn & Gray withdrew as counsel for Salem less than a week before the arbitration hearings were scheduled, citing non-payment as the reason for the withdrawal.

89.   Upon information and belief, the true reason that Ms. Leopold-Leventhal withdrew as counsel was another attempt to postpone the Arbitration hearings indefinitely and to put pressure on Mr. Logan to compromise his claims by forcing him to face the criminal charges prior to presenting his case to the AAA arbitrator.

90.   The AAA arbitrator refused to postpone the hearings indefinitely, but instead postponed them by six weeks in order to allow Salem's new counsel time to prepare for the hearings.

91.   Salem offered to drop the criminal charges if Mr. Logan withdrew the claims Delta made against Salem in the arbitration.  Mr. Logan refused to compromise his claims.

92.   In March and April 2009, with the criminal charges still pending, Salem and Delta presented their civil claims to a neutral AAA arbitrator during two weeks of hearings.

93.   After the conclusion of two weeks of hearings, on May 19, 2009 the AAA arbitrator issued an award in favor of Delta and found that all of Salem's counterclaims were groundless.  A true and correct copy of the arbitrator's award (the "Award") is attached hereto as Exhibit "K."

94.   In the Award, the arbitrator chronicled the numerous failures of Salem and its representatives that doomed the Project.  These failures began with the incomplete, inaccurate, and deficient drawings of Salem's original architect.  *See* Exhibit K at p. 2.

95.   While Salem's breach of contract and fraud claims were based on Delta's purported non-payment of subcontractors, the arbitrator noted that because Salem did not have possession of the subcontracts, did not have an understanding of the subcontract terms, and did not know whether the subcontractors' conditions precedent to payment had been satisfied, its accusations that Delta breached any of its obligations by withholding certain payments from subcontractors had no factual basis. *See* Exhibit K at p. 5.

96.   In fact, the arbitrator found that the subcontractors had been paid up to date through the issuance of joint checks for Delta's February-March invoice, and that these payments were for work performed within the time period covered by those invoices rather than "double-payments." Salem's failure to pay Delta for subsequent invoices removed Delta's obligation to pay subcontractors. *See* Exhibit K at p. 7.

97.   Further the arbitrator found that the reasons Salem and its architect cited as bases for Delta's termination were not supported by the Project documentation or credible evidence. *See* Exhibit K at p. 8-9.

98.   In fact, the arbitrator found that at the time that Delta was terminated by Salem, Salem itself was in material default of the Contract due to its failure to make required payments. *See* Exhibit K at p. 12.

99.   The AAA arbitrator rejected as unfounded all of Salem's allegations upon which Ms. Anders' Affidavit of Probable Cause was based and dismissed the fraud and breach of contract claims that Salem brought against Delta. *See* Exhibit K at p. 14. Specifically, the arbitrator stated that "[t]he Church's fraud claims are apparently grounded in a breached contract requirement or the mistaken beliefs regarding the certifications. Regardless, for the factual

reasons described above, the Church's claims of fraud were not supported by the evidence. It is the conclusion of the Arbitrator that this claim is merit less (sic)." *Id.*

100. The Award was confirmed by the Court of Common Pleas of Montgomery County and judgment was entered against Salem. A true and correct copy of the Court's order confirming the Award is attached hereto as Exhibit "L."

101. Consequently, the Montgomery County Assistant District Attorney who was handling the case against Mr. Logan engaged in discussions with Mr. Logan's attorney in or around August, 2009 regarding the likely imminent dismissal of all charges because there was insufficient evidence to support Salem's claims against Mr. Logan, even at a civil law preponderance of the evidence standard.

102. However, the Assistant District Attorney was unable to obtain the authority to dismiss the charges from his superiors until January 6, 2010, approximately seven and a half (7½) months after the AAA Arbitrator rendered his award and one (1) day after Steering Committee member Garret Page was sworn in as a judge in Montgomery County. A true and correct copy of the order dismissing all charges against Mr. Logan is attached hereto as Exhibit "M."

103. During this time period Mr. Logan's business plummeted and he was forced to incur additional legal expenses relating to the criminal charges and was unable to clear his name because the charges were still pending.

104. As a consequence of the charges brought against him and the publication of false statements that Mr. Logan committed "despicable" acts, "ripped off" subcontractors and defrauded a church, Mr. Logan's business has suffered and he has incurred substantial pecuniary losses.

105. Due to the pending criminal charges and the false statements published throughout the Philadelphia area, Delta Alliance's gross revenues in 2009 fell by more than $2.4 million from the gross revenues of the previous year.

106. Delta Alliance lost the opportunity to perform projects for Feldman Mall Properties, Inc., McDonald's and the NBA Former Players Association, due to these entities' refusal to enter into contracts while the criminal charges were pending against Mr. Logan.

107. Delta Alliance entered into preliminary agreements and/or discussions to perform projects for each of these entities, but they backed out upon discovering the various news articles available on the internet that relate to the criminal charges that Salem brought against Mr. Logan.

108. The total fee that Delta Alliance would have earned from the performance of these projects would have exceeded $3 million.

109. Delta Alliance entered into a preliminary agreement to team with Britten, Inc. to pursue a $12.9 million contract to perform all of the media sales and installation work at Reagan National and Dulles Airports in Washington, D.C.  However, discovering the various news articles available on the internet that relate to the criminal charges that Salem brought against Mr. Logan, Paul Britten opted not to team with Delta Alliance on that project, effectively ending Delta Alliance's chances of being awarded the project.

110. Further, Delta Alliance lost the ability to secure additional opportunities, during 2009 and in the future, due to the widespread false statements about Mr. Logan's character and his ability to conduct his business.

111. Due to Mr. Logan's inability to earn revenue, caused by the negative publicity associated with the false criminal charges lodged against him, Mr. Logan was unable to refinance

a sixty (60) acre property in Phoenixville valued at over $25 million and, consequently, the property was transferred by deed in lieu of foreclosure.

112. Additionally, due to the filing and prosecution of false criminal charges against Mr. Logan and the subsequent publication of false statements about his character, he has suffered from severe emotional distress.

## COUNT I
### Violation of 42 U.S.C. § 1983 – Unlawful Arrest
### Walter Logan v. Mary J. Anders

113. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

114. Ms. Anders, as a detective in the Major Crimes Unit of the Montgomery County District Attorney's Office Detective Bureau, acted as an investigative officer and a complaining witness.

115. Ms. Anders, acting without probable cause, initiated the issuance of an arrest warrant against Walter Logan.

116. Ms. Anders acted willfully and maliciously and was motivated by purposes other than bringing Mr. Logan to justice, including the standing of Chief County Detective Oscar P. Vance, Jr. as an active member of Salem and the political influence of members of Salem's Steering Committee, including then Treasurer Garret D. Page.

117. But for the existence of the personal and political connections between Salem and Montgomery County and the Montgomery County District Attorney's Office, Ms. Anders would not have interjected the authority of the Commonwealth into a civil-law contractual dispute between Salem and Delta.

118. On January 6, 2010 the Montgomery County D.A. dismissed all the criminal charges it had brought against Mr. Logan because there was no factual basis to support these charges. *See* Exhibit "M."

119. As a result of the criminal charges brought by Ms. Anders, Mr. Logan suffered severe economic and personal harm, including the restraint on his liberty, severe embarrassment, loss of standing in the community, loss of business opportunities, and legal costs, all in violation of plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Mary J. Anders in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

**COUNT II**
**Violation of 42 U.S.C. § 1983 – False Public Statements**
**Risa Vetri Ferman**

120. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

121. Ms. Ferman, acting outside of her duties as County Prosecutor, made numerous false and defamatory statements about Mr. Logan as described in paragraphs 69 through 77 of this Complaint.

122. Ms. Ferman acted willfully and maliciously and was motivated by purposes other than bringing Mr. Logan to justice, including the standing of Chief County Detective, Oscar P. Vance, Jr. as an active member of Salem and the political influence of members of Salem's Steering Committee, including then Treasurer Garret D. Page.

123. But for the existence of the personal and political connections between Salem and Montgomery County and the Montgomery County District Attorney's Office, Ms. Ferman would not have interjected the authority of the Commonwealth into a civil-law contractual dispute between Salem and Delta.

124. On January 6, 2010 the Montgomery County D.A. dismissed all the criminal charges it had brought against Mr. Logan because there was no factual basis to support these charges. *See* Exhibit "M."

125. As a result of the dissemination of false statements, Mr. Logan suffered severe economic and personal harm, severe embarrassment, loss of standing in the community, loss of business opportunities, and the inability to pursue his chosen profession, and legal costs, all in violation of plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Risa Vetri Ferman in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

## COUNT III
### Common Law Malicious Prosecution
### Salem Baptist Church of Jenkintown

126. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

127. Salem contacted the Montgomery County District Attorneys' Office Detective Bureau with the purpose of using the influence they had over this Bureau to initiate criminal proceedings against Mr. Logan.

128. The criminal proceedings against Mr. Logan were not supported by probable cause, but instead were based on the false statements and less-than half-truths promulgated by members of Salem's Steering Committee.

129. The accusations against Mr. Logan made by members of Salem's Steering Committee have been proven to be false. Salem's civil fraud and breach of contract claims were dismissed as unfounded by the AAA arbitrator and the criminal charges brought against Mr. Logan were voluntarily dismissed by the Montgomery County D.A.

130. Salem was motivated by malice towards Mr. Logan in making the false statements to Ms. Anders upon which the charges against Mr. Logan were based.

131. The criminal proceedings were initiated at the direction and/or request of Salem and would not have been initiated but for the exertion of pressure stemming from the personal and political relationships between Salem and Ms. Anders and Mr. Vance of the Montgomery County District Attorneys' Office Detective Bureau.

132. On January 6, 2010 the Montgomery County D.A. dismissed all the charges it had brought against Mr. Logan because there was no factual basis to support the charges. *See* Exhibit "M."

133. Salem acted with willful malice to initiate inappropriate and baseless criminal proceedings against Mr. Logan to pressure him to compromise Delta's position in the Arbitration and to punish him for bringing breach of contract claims against Salem.

134. As a result of Salem's actions, Mr. Logan suffered severe economic and personal harm, including the restraint on his liberty, severe embarrassment, loss of standing in the community, loss of business opportunities, and legal costs.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Salem Baptist Church of Jenkintown in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

**COUNT IV**
**Common Law Malicious Prosecution**
**Eastburn & Gray, P.C., Jane E. Leopold-Leventhal, Marc D. Jonas**

135. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

136. Ms. Leopold-Leventhal and Mr. Jonas of Eastburn & Gray, contacted the Montgomery County District Attorneys' Office Detective Bureau with the purpose of using the influence their client, Salem, had over this Bureau to initiate criminal proceedings against Mr. Logan.

137. The criminal proceedings against Mr. Logan were not supported by probable cause, but instead were based on the false statements and less-than half-truths promulgated by Ms. Leopold-Leventhal and Mr. Jonas.

138. The accusations against Mr. Logan made by Ms. Leopold-Leventhal and Mr. Jonas have been proven to be false. Salem's civil fraud and breach of contract claims were dismissed as unfounded by the AAA arbitrator and the criminal charges brought against Mr. Logan were voluntarily dismissed by the Montgomery County D.A.

139. Ms. Leopold-Leventhal and Mr. Jonas were motivated by malice towards Mr. Logan in making the false statements to Ms. Anders upon which the charges against Mr. Logan were based.

140. The criminal proceedings were initiated at the direction and/or request of Ms. Leopold-Leventhal and Mr. Jonas and would not have been initiated but for the exertion of pressure stemming from the personal and political relationships between their client, Salem, and Ms. Anders and Mr. Vance of the Montgomery County District Attorneys' Office Detective Bureau.

141. On January 6, 2010 the Montgomery County D.A. dismissed all the charges it had brought against Mr. Logan because there was no factual basis to support the charges. *See* Exhibit "M."

142. Ms. Leopold-Leventhal and Marc D. Jonas acted with willful malice to initiate inappropriate and baseless criminal proceedings against Mr. Logan to pressure him to compromise Delta's position in the Arbitration and to punish him for bringing breach of contract claims against Salem.

143. As a result of the actions of Ms. Leopold-Leventhal and Marc D. Jonas, Mr. Logan suffered severe economic and personal harm, including the restraint on his liberty, severe embarrassment, loss of standing in the community, loss of business opportunities, and legal costs.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Eastburn & Gray, P.C., Jane Leopold-Leventhal, and Marc D. Jonas in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

## COUNT V
## Common Law Malicious Prosecution
### Mary J. Anders

144. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

145. Ms. Anders initiated criminal proceedings against Mr. Logan.

146. Ms. Anders initiated the criminal proceeding against Mr. Logan without probable cause.

147. Ms. Anders acted willfully and maliciously and was motivated by purposes other than bringing Mr. Logan to justice, including the standing of Chief County Detective, Oscar P. Vance, Jr. as an active member of Salem and the political influence of members of Salem's Steering Committee, including then Treasurer Garret D. Page.

148. But for the existence of the personal and political connections between Salem and Montgomery County and the Montgomery County District Attorney's Office, Ms. Anders would not have interjected the authority of the Commonwealth into a civil-law contractual dispute between Salem and Delta.

149. On January 6, 2010 the Montgomery County D.A. dismissed all the criminal charges it had brought against Mr. Logan because there was no factual basis to support these charges. *See* Exhibit "M."

150. As a result of the criminal charges brought by Ms. Anders, Mr. Logan suffered severe economic and personal harm, including the restraint on his liberty, severe embarrassment, loss of standing in the community, loss of business opportunities, and legal costs

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Mary J. Anders, the Montgomery

County District Attorney's Office and Montgomery County in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

**COUNT VI**
**Common Law Malicious Abuse of Process**
**Salem Baptist Church of Jenkintown**

151. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

152. Salem contacted the Montgomery County District Attorneys' Office Detective Bureau with the purpose of using the influence it had over this Bureau to initiate criminal proceedings against Mr. Logan.

153. Salem used its political influence to cause Ms. Ferman and the Montgomery County District Attorneys' office to maintain these criminal proceedings for a purpose other than that for which they were intended.

154. Salem acted willfully and maliciously and used these criminal proceedings solely to harass and to embarrass Mr. Logan and to interfere with his business prospects and livelihood, rather than to bring Mr. Logan to justice for crimes that he had allegedly committed.

155. As a result of Salem's abuse of criminal proceedings, Mr. Logan suffered severe economic and personal harm, including the restraint on his liberty, severe embarrassment, loss of standing in the community, loss of business opportunities, and legal costs.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Salem Baptist Church of Jenkintown in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

## COUNT VII
### Common Law Malicious Abuse of Process
### Eastburn & Gray, P.C., Jane E. Leopold-Leventhal, Marc D. Jonas

156. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

157. Ms. Leopold-Leventhal and Mr. Jonas of Eastburn & Gray contacted the Montgomery County District Attorneys' Office Detective Bureau with the purpose of using the influence their client, Salem, had over this Bureau to initiate criminal proceedings against Mr. Logan.

158. Ms. Leopold-Leventhal and Mr. Jonas used their client's political influence to cause Ms. Ferman and the Montgomery County District Attorneys' office to maintain these criminal proceedings for a purpose other than that for which they were intended.

159. Ms. Leopold-Leventhal and Mr. Jonas acted willfully and maliciously and used these criminal proceedings solely to harass and to embarrass Mr. Logan and to interfere with his business prospects and livelihood, rather than to bring Mr. Logan to justice for crimes that he had allegedly committed.

160. As a result of the abuse of criminal proceedings by Ms. Leopold-Leventhal and Mr. Jonas, Mr. Logan suffered severe economic and personal harm, including the restraint on his liberty, severe embarrassment, loss of standing in the community, loss of business opportunities, and legal costs.

**WHEREFORE,** Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Eastburn & Gray, P.C., Jane Leopold-Leventhal, and Marc D. Jonas in an amount in excess of $50,000,000.00, together with costs,

attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

## COUNT VIII
### Common Law Malicious Abuse of Process
### Mary J. Anders and Risa Vetri Ferman

161. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

162. Ms. Anders, as a detective in the Major Crimes Unit of the Montgomery County District Attorney's Office Detective Bureau, initiated criminal proceedings against Mr. Logan.

163. Ms. Ferman, as the District Attorney of Montgomery County, aided Salem by prosecuting the criminal charges against Mr. Logan for approximately one year.

164. Ms. Anders and Ms. Ferman used these proceedings for a purpose other than that for which they were intended.

165. Ms. Anders and Ms. Ferman acted willfully and maliciously and used these criminal proceedings solely to harass and to embarrass Mr. Logan and to interfere with his business prospects and livelihood, rather than to bring Mr. Logan to justice for crimes that he had allegedly committed.

166. But for the existence of the personal and political connections of members of Salem to Montgomery County and the Montgomery County District Attorneys' Office, Ms. Anders and Ms. Ferman would not have used criminal proceedings to harass and embarrass Mr. Logan in retribution for the breakdown of the contractual relationship between Salem and Delta.

167. As a result of the abuse of criminal proceedings by Ms. Anders and Ms. Ferman, Mr. Logan suffered severe economic and personal harm, including the restraint on his liberty,

severe embarrassment, loss of standing in the community, loss of business opportunities, and legal costs.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Mary J. Anders, Risa Vetri Ferman, the Montgomery County District Attorney's Office, and Montgomery County in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

**COUNT IX**
**Civil Conspiracy**
**Salem Baptist Church of Jenkintown, Eastburn & Gray, P.C.,**
**Jane E. Leopold-Leventhal, Marc D. Jonas, Mary J. Anders, Risa Vetri Ferman,**

168. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

169. Salem along with its attorneys, Ms. Leopold-Leventhal and Mr. Jonas of Eastburn & Gray, as well as Ms. Anders and Ms. Ferman of the Montgomery County D.A., acted in concert with the purpose of bringing and maintaining false criminal charges against Mr. Logan.

170. Salem, Ms. Leopold-Leventhal, Mr. Jonas, Ms. Anders and Ms. Ferman acted maliciously, with the intent of injuring Mr. Logan, his reputation and his business by unlawfully using the influence of Ms. Anders within the Montgomery County Detective Bureau and Ms. Ferman within the Montgomery County D.A. to bring and maintain false charges against him.

171. Salem, Ms. Leopold-Leventhal, Mr. Jonas, Ms. Anders and Ms. Ferman took overt acts in furtherance of their common purpose to injure Mr. Logan.

172. In furtherance of their unlawful purpose, Salem, Ms. Leopold-Leventhal and Mr. Jonas took advantage of the relationships they had with Montgomery County and the District Attorneys' Office Detective Bureau, including the Chief Detective, Salem member Oscar P.

Vance, Jr. to influence the initiation of charges against Mr. Logan. They filed false charges against Mr. Logan, aided in authoring the Affidavit of Probable Cause upon which these charges were based, and ensured widespread publication of the criminal charges by bringing Mr. Logan's arraignment to the attention of the news media.

173. Ms. Anders used her position in the Major Crimes Unit of the Montgomery County District Attorneys' Office Detective Bureau to ensure that charges would be brought against Mr. Logan and that he would be arrested and prosecuted based upon the false statements of Salem, Ms. Leopold-Leventhal and Mr. Jonas.

174. Ms. Ferman used her position with the Montgomery County D.A. to ensure that the criminal charges against Mr. Logan would be maintained for approximately one year, without going to trial, and made statements to the news media about Mr. Logan's guilt after his arraignment.

175. Mr. Logan was injured by the combined actions of Salem, Ms. Leopold-Leventhal, Mr. Jonas, Ms. Anders and Ms. Ferman, and has suffered actual losses including, *inter alia*, the expenses of his criminal defense, injuries to his personal reputation and business reputation, and loss of business due to the pending criminal charges.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Salem Baptist Church of Jenkintown, Eastburn & Gray, P.C., Jane Leopold-Leventhal, Marc D. Jonas, Mary J. Anders, Risa Vetri Ferman, the Montgomery County District Attorney's Office, and Montgomery County in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

33

**COUNT X**
**Defamation**
**Salem Baptist Church of Jenkintown, Eastburn & Gray, P.C.,**
**Jane E. Leopold-Leventhal, Marc D. Jonas**

176. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

177. Salem and its attorneys, Ms. Leopold-Leventhal and Marc D. Jonas of Eastburn & Gray, made erroneous statements to Ms. Anders that Mr. Logan stole money and/or defrauded Salem during the course of Delta's performance of the work on the Project.

178. These statements were false.

179. The recipient of this information, Ms. Anders, understood that these comments were made towards Mr. Logan and understood the defamatory purpose of these statements.

180. These statements were defamatory *per se* as they related to purported misconduct with respect to Mr. Logan's business activities.

181. Salem, Ms. Leopold-Leventhal and Mr. Jonas knowingly and recklessly made false statements ascribing conduct to Mr. Logan that they knew would adversely affect his business as a construction manager.

182. As a result of the publication of these false and defamatory statements, Mr. Logan suffered actual damages, including *inter alia* injuries to his personal reputation and business reputation, and loss of business.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Salem Baptist Church of Jenkintown, Eastburn & Gray, P.C., Jane Leopold-Leventhal, and Marc D. Jonas in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

## COUNT XI
### Defamation
### Risa Ferman

183. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

184. After Mr. Logan was arraigned on January 14, 2009 Ms. Ferman made false and defamatory statements to the press regarding Mr. Logan. *See* Exhibits E-I.

185. Ms. Ferman understood that her statements would be further published to the general public through the radio broadcast of WKYW and the television broadcast of NBC 10 Philadelphia, and would be published in written form by various Philadelphia-area news organizations.

186. Ms. Ferman knowingly made these statements in reckless disregard of whether they were true or false and acted without privilege under the law.

187. Ms. Ferman was acting outside of her prosecutorial function when she made these statements, as they were not made during a court function but were instead made to members of the press after Mr. Logan's arraignment had concluded. These statements were made for the purpose of disseminating false statements and defaming and injuring Mr. Logan and Delta Alliance.

188. Ms. Ferman knew or should have known that these statements would have had a deleterious effect on Mr. Logan's ability to conduct business in the greater-Philadelphia region.

189. The recipients of this information understood that these comments were made towards Mr. Logan and understood the defamatory purpose of these statements.

190. These statements were defamatory *per se* as they related to purported misconduct with respect to Mr. Logan's business activities.

191. Ms. Ferman's statements ascribed conduct to Mr. Logan that would adversely affect his fitness for the proper performance of his business as a construction manager.

192. As a result of the publication of these false and defamatory statements, Mr. Logan suffered actual damages, including *inter alia* injuries to his personal reputation and business reputation, and loss of business.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Risa Vetri Ferman, the Montgomery County District Attorney's Office, and Montgomery County in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

**COUNT XII**
**False Light Invasion of Privacy**
**Risa Ferman**

193. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

194. After Mr. Logan was arraigned on January 14, 2009 Ms. Ferman made false statements to the press regarding Mr. Logan's character. *See* Exhibits E-I.

195. The statements related to a private matter, the private contractual dispute entered into between Mr. Logan's company and Salem.

196. Ms. Ferman made statements that misrepresented Mr. Logan's character, calling him "low" and "despicable" for "ripping off" a church.

197. These statements were publicized, in that they were widely distributed by the news media throughout the Philadelphia area.

198. Ms. Ferman understood that her statements would be further published to the general public through the radio broadcast of WKYW and the television broadcast of NBC 10 Philadelphia, and would be published in written form by various Philadelphia-area news organizations.

199. Ms. Ferman's misrepresentations of Mr. Logan's character and activities would be highly offensive to a reasonable person and, in fact, were highly offensive to Mr. Logan.

200. Ms. Ferman's statements were not of legitimate concern to the public because they related to a private contractual dispute between Mr. Logan's company and Salem.

201. As a result of Ms. Ferman's public placement of Mr. Logan's character in a false light, Mr. Logan suffered severe emotional despair and other damages, including *inter alia* injuries to his personal reputation and business reputation, and loss of business.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Risa Vetri Ferman, the Montgomery County District Attorney's Office, and Montgomery County in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

**COUNT XIII**
**Commercial Disparagement**
**Salem Baptist Church of Jenkintown, Eastburn & Gray, P.C.,**
**Jane E. Leopold-Leventhal, Marc D. Jonas, Risa Ferman,**

202. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

203. Salem and its attorneys, Ms. Leopold-Leventhal and Marc D. Jonas of Eastburn & Gray, made false statements to Ms. Anders that Mr. Logan stole money and/or defrauded Salem during the course of Delta's performance of the work on the Project.

204. Salem, Ms. Leopold-Leventhal and Marc D. Jonas made these statements in reckless disregard of whether they were true or false.

205. After Mr. Logan was arraigned on January 14, 2009 Ms. Ferman made false and defamatory statements to the press regarding Mr. Logan. *See* Exhibits E-I.

206. Ms. Ferman knowingly made these statements in reckless disregard of whether they were true or false.

207. Salem, Ms. Leopold-Leventhal, Mr. Jonas and Ms. Ferman intended that pecuniary loss would result from their statements and/or should have reasonably known that Mr. Logan would suffer pecuniary loss due to these statements.

208. As a result of the publication of these false statements, Mr. Logan suffered pecuniary loss resulting from injuries to his business reputation and associated loss of business.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Salem Baptist Church of Jenkintown, Eastburn & Gray, P.C., Jane Leopold-Leventhal, and Marc D. Jonas, Risa Vetri Ferman, the Montgomery County District Attorney's Office, and Montgomery County in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

**COUNT XIV**
**Negligence**
**Salem Baptist Church of Jenkintown, Eastburn & Gray, P.C.,**
**Jane E. Leopold-Leventhal, Marc D. Jonas**

209. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

210. Salem and its attorneys, Ms. Leopold-Leventhal and Mr. Jonas of Eastburn & Gray, had a duty to Mr. Logan and Delta Alliance to reasonably investigate the facts and legal issues

involved in the underlying contractual relationship between Salem and Delta prior to making accusations to the Montgomery County District Attorneys' Office Detective Bureau that Mr. Logan had committed crimes against Salem.

211. Salem, Ms. Leopold-Leventhal, and Mr. Jonas breached this duty by failing to reasonably investigate Delta's contractual duties and jumping to the conclusion that Mr. Logan had committed fraud in the execution of the Contract.

212. As a result, Salem, Ms. Leopold-Leventhal, and Mr. Jonas contacted the Montgomery County District Attorneys' Office Detective Bureau and accused Mr. Logan of having committed fraud, theft by deception, and other crimes. These accusations have been proven to be false.

213. As a direct and proximate result of the accusations of Salem, Ms. Leopold-Leventhal, and Mr. Jonas, Mr. Logan suffered injuries to his business, the Delta Alliance, and to his personal life.

214. Mr. Logan suffered severe economic and personal harm, including the restraint on his liberty, severe embarrassment, loss of standing in the community, loss of business opportunities, and legal costs.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against Salem Baptist Church of Jenkintown, Eastburn & Gray, P.C., Jane Leopold-Leventhal, and Marc D. Jonas in an amount in excess of $50,000,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

**COUNT XV**
**Violation of Dragonetti Act, 42 Pa.C.S.A. § 8351**
**Eastburn & Gray, P.C., Jane E. Leopold-Leventhal, Marc D. Jonas**

215. Plaintiffs incorporate by reference the above paragraphs as if set forth at length herein.

216. As the attorneys and law firm of counsel for Salem, Ms. Leopold-Leventhal and Mr. Jonas initiated an action against, *inter alia*, Mr. Logan and Delta Alliance by Petition in the Montgomery Court of Common Pleas seeking special and preliminary injunctive relief. The action was captioned Salem Baptist Church of Jenkintown v. The Delta Organization, Inc., et al., Montgomery CCP, No. 08-29722.

217. Ms. Leopold-Leventhal and Mr. Jonas acted in a grossly negligent manner and/or without probable cause by filing a Petition that had no basis in law and which was based on false representations of fact.

218. Through the filing of the Petition, Ms. Leopold-Leventhal and Mr. Jonas acted in bad faith, with the primary purpose of harassing and maliciously injuring Mr. Logan and Delta Alliance.

219. Due to the wrongful use of civil proceedings by Ms. Leopold-Leventhal and Mr. Jonas, Mr. Logan and Delta Alliance incurred injuries, including the freezing of their assets for eleven (11) days and the disruption of their business, the attorneys' fees associated with defending Salem's claims.

220. Additionally, Mr. Logan suffered emotional distress associated with the freezing of his assets.

**WHEREFORE**, Walter J. Logan, Jr. and The Delta Alliance, LLC respectfully request that this Court enter judgment in their favor and against, Eastburn & Gray, P.C., Jane Leopold-

Leventhal, and Marc D. Jonas in an amount in excess of $50,000.00, together with costs, attorney's fees, punitive damages and any other relief that this Court deems just and proper under the circumstances of this case.

Respectfully Submitted,

_____/s/ Edward Seglias_____
Edward Seglias
Matthew Gioffre
COHEN SEGLIAS PALLAS GREENHALL &
Dated:   5/17/10                                     FURMAN P.C.
United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA  19103
(215) 564-1700 (phone)
(215) 564-3066 (fax)

_____/s/ Thomas Martin_____
Thomas Martin
Mark W. Tanner
FELDMAN, SHEPHERD, WOHLGELERNTER,
TANNER, WEINSTOCK & DODIG
1845 Walnut Street, 25th Floor
Philadelphia, PA  19103
(215) 567-8300 (phone)
(215) 567-8333 (fax)

## DEMAND FOR A JURY TRIAL

Plaintiff, Walter J. Logan, Jr., hereby demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully Submitted,

Dated:   5/17/10

    /s/ Edward Seglias
Edward Seglias
Matthew Gioffre
COHEN SEGLIAS PALLAS GREENHALL &
FURMAN P.C.
United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA  19103
(215) 564-1700 (phone)
(215) 564-3066 (fax)

    /s/ Thomas Martin
Thomas Martin
Mark W. Tanner
FELDMAN, SHEPHERD, WOHLGELERNTER,
TANNER, WEINSTOCK & DODIG
1845 Walnut Street, 25th Floor
Philadelphia, PA  19103
(215) 567-8300 (phone)
(215) 567-8333 (fax)

#879621-v1 06773-0065