**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

WALTER J. LOGAN, JR. and      :
THE DELTA ALLIANCE, LLC,      :
                              :      CIVIL ACTION
            Plaintiffs,       :
                              :      No. 10-cv-0144
      vs.                     :
                              :
SALEM BAPTIST CHURCH OF       :
JENKINTOWN, et al.,           :
                              :
            Defendants.       :

## MEMORANDUM AND ORDER

**Joyner, J.**                                      **July 29, 2010**

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. For the reasons stated below, Defendants' Motion to Dismiss is DENIED. Defendants request alternative relief in the way of a Motion to Strike Plaintiffs' *ad damnum* clause and paragraph fourteen of the First Amended Complaint. For the reasons stated below, Defendants' Motion to Strike is GRANTED.

### Factual Background

This action arises out of the events following a contractual dispute between Plaintiffs Walter J. Logan and his company, The Delta Alliance, LLC ("Delta"), and Defendant Salem Baptist Church of Jenkintown ("Salem"). In October of 2003, Plaintiff Delta entered into a contract with Defendant Salem in which Delta agreed to act as an at-risk construction manager that would

1

negotiate multiple contracts with subcontractors for both labor and materials to construct two buildings in Jenkintown, Pennsylvania. However, due to problems involving the original architect on the job and Defendant Salem's alleged inability to produce plans and specifications to obtain building permits, the project met substantial delays. Because of these delays and other financial problems associated with the project, Defendant Salem was behind in its payments to Plaintiff Delta as of June 2007. In response to Plaintiff Delta's requests for payment, Defendant Salem terminated its contract with Delta.

As a result, Plaintiff Delta filed a claim with the American Arbitration Association ("AAA") in July 2007 seeking damages for nonpayment under the contract and for wrongful termination of the contract. Salem cross-claimed that Delta had misappropriated payments received from Salem. Plaintiffs allege that Salem and its attorneys, in an effort to avoid embarrassment and to avoid resolving their civil dispute in the AAA, used their political connections to enlist the aid of Defendants Anders and Ferman. Specifically, Plaintiffs allege that Defendant Anders, a detective in the Major Crimes Unit of the Montgomery County District Attorney's Office, was persuaded by members of Salem's Steering Committee, the church's planning board, to begin a criminal investigation. Plaintiff alleges that after meeting

with members of the Steering Committee, Defendant Anders signed an affidavit of probable cause that led to the issuance of a warrant for Plaintiff Logan's arrest. As a result, Plaintiff Logan was charged with theft by unlawful taking, theft by deception, theft by failure to make required disposition, deceptive business practices, misapplication of entrusted property, and securing execution of documents by deception (collectively the "Accused Crimes") in connection with the dissolution of Delta's contract with Salem. Plaintiffs further allege that Defendant Ferman, the Montgomery County District Attorney, was encouraged by members of Salem's Steering Committee to make false statements to the press about Plaintiff Logan while Plaintiff's charges were pending. Defendant Ferman stated that Mr. Logan "was entrusted by the church with overseeing a major construction project. He took money from them; he hired people to do work; and then he ripped off his subcontractors, never paid them, and pocketed the money for himself."

After the AAA found for Plaintiffs in the contractual dispute and all criminal charges against Plaintiff Logan were dropped due to a lack of evidence, Plaintiffs filed their Complaint in this Court in January of 2010, but did not serve Defendants until April 26, 2010. On April 28, 2010, Defendants Anders and Ferman filed a Motion to Dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6).  Plaintiffs then filed their
First Amended Complaint on May 17, 2010.  On May 20, 2010,
Defendants again filed a Motion to Dismiss pursuant to Rule
12(b)(6).

In Counts I and II of the First Amended Complaint,
Plaintiffs assert claims under 42 U.S.C. § 1983 for false arrest
and for making false public statements.  Specifically, Plaintiffs
allege in Count I that Defendant Anders, by relying only upon
assertions and documents provided by Salem and its counsel, acted
without probable cause in initiating the issuance of an arrest
warrant against Plaintiff Logan in violation of Plaintiff's
Fourth and Fourteenth Amendment rights.  In Count II, Plaintiffs
allege that Defendant Ferman made numerous false and defamatory
statements regarding Plaintiff Logan's arrest, thereby violating
Plaintiffs' Fourteenth Amendment rights.  As a result of being
charged with the Accused Crimes and Defendant Ferman's public
statements, Plaintiffs claim that Mr. Logan has suffered from
severe emotional distress and embarrassment, and that his
personal and professional reputation, through Delta, is damaged
to the point where he can no longer conduct his construction
business.  Plaintiffs also bring numerous state law claims,
including malicious prosecution, malicious abuse of process,
civil conspiracy, defamation, false light invasion of privacy,

commercial disparagement, negligence, and a violation of the
Dragonetti Act.

## Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint
should be dismissed if the plaintiff has failed to "state a claim
on which relief can be granted."  In evaluating a motion to
dismiss, the court must take all well-pleaded factual allegations
in the light most favorable to the non-moving party, but it is
not required to blindly accept "a legal conclusion couched as a
factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 283, 286
(1986).  Although a plaintiff is not required to plead detailed
factual allegations, the complaint must include enough facts to
"raise a right to relief above the speculative level." <u>Bell Atl.
Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

## Discussion

*1.  Unlawful Arrest*

Plaintiff Logan's § 1983 claim against Defendant Anders for
unlawful arrest is sufficient to survive a Motion to Dismiss
under Rule 12(b)(6).  Defendant seeks the dismissal of Count I of
the Amended Complaint on the grounds that Defendant Anders is
entitled to absolute immunity.  Indeed, a state prosecuting
attorney, acting within the scope of her duties in initiating and
pursuing a criminal prosecution, is entitled to absolute immunity

and is not amenable to suit in her official capacity.  Imbler v. Pachtman, 424 U.S. 409, 496 (1976).  Although a prosecutor is entitled to absolute immunity when performing the traditional prosecutorial functions as the state's advocate, she is entitled to only qualified immunity when acting as a complaining witness by presenting a judge with an affidavit of probable cause in support of a warrant.  Kalina v. Fletcher, 522 U.S. 118 (1997) (citing Malley v. Briggs, 475 U.S. 335, 340-41 (1986)).

Here, Defendant Anders asserts that she is entitled to absolute immunity under the Third Circuit's decision in Hyatt v. County of Passaic, which extended Imbler immunity to a county detective for her investigative assistance in initiating a prosecution.  Hyatt v. County of Passaic, 340 F. App'x 833, 837-38 (3d Cir. 2009).  The title of Defendant Anders's position as detective, however, is not dispositive of entitlement to Hyatt immunity.  Absolute immunity requires a functional analysis that looks to "the nature of the function performed, not the identity of the actor who performed it."  Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (citation omitted).  While the decision to file charges is central to a prosecutor's role in initiating prosecutions, Defendant Anders seeks the protection of absolute immunity not for making a decision to file charges, but for her conduct as a complaining witness–that is, for her role in

affirming what Plaintiffs allege is a false affidavit of probable cause. The Kalina and Malley decisions are quite clear that this type of conduct is not protected by absolute immunity; thus, Defendant Anders is entitled to, at most, qualified immunity.

An officer who caused an allegedly unlawful arrest is accorded qualified immunity based on an objective reasonableness standard. Malley, 475 U.S. at 345. The protection of qualified immunity is lost "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Id. at 345 (quoting United States v. Leon, 468 U.S. 897 (1984)). As such, the relevant inquiry for whether an individual is accorded qualified immunity is whether a reasonably trained officer "would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Id. Given that "[t]he fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial," Imbler, 424 U.S. at 419 (citing Wood v. Strickland, 420 U.S. 308, 321 (1975)), Defendant's Motion to Dismiss Plaintiff Logan's § 1983 claim for unlawful arrest cannot be granted solely on the basis of any potential immunity, and must be denied so long as Plaintiffs have sufficiently stated a claim for unlawful arrest.

To state a civil rights claim under § 1983, "a plaintiff must allege both a deprivation of a federally protected right and that this deprivation was committed by one acting under the color of state law."  Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997).  A § 1983 claim for an arrest in which the police lacked probable cause is grounded in the Fourth Amendment's protection from unreasonable searches and seizures.  Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (citing Barna v. City of Perth Amboy, 42 F.3d 809, 830 (3d Cir. 1994)).  In a situation "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983."  Id.  As such, to state a § 1983 claim for unlawful arrest, a plaintiff must allege that he was arrested by a state actor without probable cause.  Id.

Here, Plaintiff Logan has stated that he would not have been arrested but for Defendant Anders's affirmation of an allegedly false affidavit of probable cause.  Further, he states that Defendant Anders knew that she lacked probable cause for initiating an arrest.  Plaintiff thus alleges a violation of his Fourth Amendment rights.  Because Defendant Anders was acting in her official capacity as a county detective in affirming the allegedly false affidavit, she was acting under the color of state law.  Therefore, Plaintiffs have sufficiently stated a § 1983 claim for unlawful arrest.  We must see all of the facts

to determine whether Defendant Anders is entitled to the protection of qualified immunity.  As such, Defendants' Motion to Dismiss Plaintiff Logan's Count I claim for unlawful arrest is denied.

*2.    False Public Statements*

Regarding Count II of Plaintiffs' Amended Complaint against Defendant Ferman for making false public statements, Plaintiffs have adequately stated a claim under 42 U.S.C. § 1983.  As we stated above, to state a civil rights claim under § 1983, "a plaintiff must allege both a deprivation of a federally protected right and that this deprivation was committed by one acting under the color of state law."  <u>Lake</u>, 112 F.3d at 689.

Defendants assert that Plaintiffs failed to allege that Defendant Ferman was acting under color of state law because Count II of the Amended Complaint sets forth that Defendant Ferman made the alleged defamatory statements while "acting outside of her duties as County Prosecutor."  However, making statements to the press is an inherent part of a prosecutor's role.  <u>See, e.g.</u>, <u>Buckley</u>, 509 U.S. at 278 (noting that public statements are an integral part of a prosecutor's role).  As stated above, all of Defendant Ferman's statements were made to the press in connection with Plaintiff Logan's prosecution. Therefore, for the purposes of a motion to dismiss, Plaintiffs

have pled sufficient facts that allow us to conclude that Defendant Ferman deprived Plaintiffs of their rights, if at all, while acting under the color of state law.

Therefore, the relevant inquiry is whether Plaintiffs have alleged a deprivation of a federally or constitutionally protected right or interest. Here, Plaintiffs assert that their due process rights were violated when Defendant Ferman willfully and maliciously made false statements to the press regarding Plaintiff Logan's prosecution. The crux of Plaintiffs' damages is the impact that Defendant Ferman's statements have had on Plaintiffs' reputation in the community. Specifically, Plaintiffs request relief for "severe economic and personal harm, severe embarrassment, loss of standing in the community, loss of business opportunities, and the inability to pursue [Mr. Logan's] chosen profession."

An individual does not have a protected due process interest in reputation alone. Thomas v. Independence Twp., 463 F.3d 285, 297 (3d Cir. 2006). To properly state a "due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." Dee v. Borough of Dunmore, 549 F.3d 225, 233-34 (3d Cir. 2008) (quoting Paul v. Davis, 424 U.S. 693, 712 (1976)). Importantly, economic and financial harm have

been deemed "too ethereal" to support this "plus" element. Good v. City of Sunbury, 352 F. App'x 688, 692 (3d Cir. 2009) (citing Sturm v. Clark, 835 F.2d 1009, 1013 (3d Cir. 1987)). Furthermore, humiliation and embarrassment are classified as reputational interests, and thus cannot satisfy the "plus" element. Kulwicki, 969 F.2d at 1466 n.14. Similarly, it has consistently been held that emotional distress is insufficient to constitute the "plus" factor in a Fourteenth Amendment claim, (Good, 352 F. App'x at 692), as is the loss of business opportunities. See Mun. Revenue Servs., Inc. v. McBlain, 347 F. App'x 817, 826-27 (3d Cir. 2009) (holding that the loss of ability to compete for future contracts cannot support a § 1983 defamation claim).

As such, if Plaintiff has stated a valid § 1983 claim at all, it is a procedural due process claim for depriving Plaintiff of his ability to pursue his chosen profession. The Fourteenth Amendment protects against "state deprivations of life, liberty, or property without due process of law." Thomas, 463 F.3d at 297 (quoting Robb v. City of Phila., 733 F.2d 286, 292 (3d Cir. 1984). The Third Circuit has recognized that "the liberty to pursue a calling or occupation . . . is secured by the Fourteenth Amendment." Id. (citations omitted). In Thomas, the court adopted the Fifth Circuit's test for such a claim under which the

plaintiff must show "that the alleged harassment 'remove[d] or significantly alter[ed]' plaintiffs' liberty and property interests in their business" in order to succeed.  Id. (quoting San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 702 (5th Cir. 1991)).

In Thomas, the plaintiff business owner alleged that township officials and local police officers engaged in a campaign of defamation, harassment, and intimidation, and thus deprived the plaintiff of his liberty and property interests in his business without due process of law.  Id.  The court found his allegations sufficient to survive the defendant's motion to dismiss.  Id.  Here, Plaintiffs allege a similar campaign against them.  As a result of this campaign, specifically Defendant Ferman's part in making false public statements, Plaintiffs claim that their reputation is damaged such that they can no longer operate their construction business.  Given the similarity between the Thomas plaintiff's allegations and those of the Plaintiffs here, we conclude that Plaintiffs have adequately pled a violation of their Fourteenth Amendment due process rights in Count II.  Because Plaintiffs have alleged the deprivation of their ability to pursue their chosen profession, in addition to the deprivation of their liberty interest in their reputation, Plaintiffs' allegations may satisfy both elements of the "stigma-

plus" test.  Therefore, Defendants' Motion to Dismiss Count II is
denied.

*3.  Supplemental Jurisdiction*

Defendants request that this Court decline to exercise
supplemental jurisdiction over Counts III through XV because
there is no independent basis for subject matter jurisdiction
over these state law claims, as there is no diversity of
citizenship between the parties.  Indeed, "where the claim[s]
over which the district court has original jurisdiction [are]
dismissed before trial, the district court *must* decline to decide
the pendent state claims unless considerations of judicial
economy, convenience, and fairness to the parties provide an
affirmative justification for doing so."  Hedges v. Musco, 204
F.3d 109, 123 (3d Cir. 2000) (quoting Borough of West Miflin v.
Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)).  However, we have
denied Defendants' Motion to Dismiss the § 1983 claims.  As such,
the relevant inquiry is whether the state law claims "are so
related to claims in the action within such original jurisdiction
that they form part of the same case or controversy under Article
III of the United States Constitution."  28 U.S.C. § 1367(a).
Claims are part of the same constitutional case or controversy if
the federal and state claims "derive from a common nucleus of
operative fact . . . such that [the plaintiff] would ordinarily

be expected to try them all in one judicial proceeding."
Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991)
(quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).

It should be clear from the above discussion that this Court
may exercise subject matter jurisdiction over Plaintiffs' § 1983
claims for unlawful arrest and for making false public
statements, as the court has statutory authority under 28 U.S.C.
§§ 1331 and 1343 to hear these claims. Therefore, we must
determine whether the resolution of Plaintiffs' state law claims
has enough factual overlap with the § 1983 claims to justify the
exercise of supplemental jurisdiction.

    A.    *Malicious Prosecution*

In Counts III through V, Plaintiffs assert common law claims
for malicious prosecution against Defendant Salem, Salem's
attorneys and Defendants Anders and Ferman. For Plaintiffs to
succeed on a claim for malicious prosecution under Pennsylvania
law, they must show the following: (1) Defendants initiated a
criminal proceeding against Plaintiffs; (2) the criminal
proceeding was terminated in Plaintiffs' favor; (3) there was a
lack of probable cause to commence the criminal proceeding; (4)
Defendants' actions were malicious or were undertaken for a
purpose other than bringing Plaintiffs to justice; and (5)
Plaintiffs were harmed as a result of Defendants' conduct.

<u>Doherty v. Haverford Twp.</u>, 513 F. Supp. 2d 399, 409 (E.D. Pa. 2007). Given that the resolution of the § 1983 claim for unlawful arrest requires a determination of the existence of probable cause, and that this determination depends in large part upon the substance of the evidence that the various Defendants provided to Defendant Anders, the factual overlap supports the notion that these claims are part of the same constitutional case or controversy. Further, Plaintiffs would be expected to introduce evidence regarding Defendants' mindset in filing the charges as well as the damages that resulted in support of their federal claim. Therefore, this Court may exercise supplemental jurisdiction over Counts III through V for malicious prosecution.

B. *Malicious Abuse of Process*

In Counts VI through VIII, Plaintiffs assert common law claims for malicious abuse of process against Defendant Salem, Salem's attorneys and Defendants Anders and Ferman. To recover on an abuse of process claim under Pennsylvania law, Plaintiffs must show that Defendants "(1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." <u>Harris v. Brill</u>, 844 A.2d 567, 572 (Pa. Super. Ct. 2004). The resolution of these claims, much like the resolution of the malicious prosecution claims, will require an analysis of

the same set of underlying facts as the § 1983 claims for false arrest and for making false public statements.  Specifically, the facts relevant to the first prong of the malicious abuse of process test would need to be established to prove unlawful arrest, and the harm element of the third prong is the gravamen of Plaintiffs' § 1983 claim against Defendant Ferman for making false public statements.  As such, this Court has the statutory authority to exercise supplemental jurisdiction over Counts VI through VIII.

  *C. Civil Conspiracy*

  In Count IX, Plaintiffs assert a claim for civil conspiracy against Defendant Salem, Salem's attorneys, and Defendants Anders and Ferman.  To state an action for civil conspiracy under Pennsylvania law, "a complaint must allege:  1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage."  Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super. Ct. 2004).  The facts that Plaintiffs must prove to support this claim are substantially similar to the facts underlying the § 1983 claims, and most specifically, to the facts concerning the evidence that Defendants Salem and its attorneys provided to Defendant Anders

regarding the existence of probable cause. Further, Plaintiffs would be expected to introduce evidence concerning Defendant Anders's motive for providing the false affidavit of probable cause, and, as noted above, this motive involves allegations of joint decision making by Defendants Salem, its attorneys, Anders and Ferman. Therefore, the common nucleus of facts supports the notion that the civil conspiracy claim is part of the same case or controversy as the § 1983 claims, and this Court may exercise supplemental jurisdiction over Count IX.

     *D.   Defamation*

In Counts X and XI, Plaintiffs allege state law claims for defamation against Defendants Salem and Salem's attorneys for their role in providing Defendant Anders with evidence of Plaintiffs' criminal activity, and against Defendant Ferman for the statements that she made to the press regarding Plaintiff Logan's prosecution. To recover on a defamation claim, Plaintiffs must establish the following: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; and (6) either special harm resulting to the plaintiff from its publication or abuse of a conditionally

privileged occasion.  42 Pa. Cons. Stat. § 8342 (2007).  The

facts supporting the defamation claim against the various

Defendants for their role in providing Defendant Anders with

evidence of Plaintiffs' criminal activity are substantially the

same as the facts that must be proved to resolve the § 1983 claim

for unlawful arrest.  Specifically, the facts that are necessary

to prove the existence or lack of probable cause will almost

certainly overlap with evidence about whether the statement was

defamatory in nature.  With respect to the defamation claim

against Defendant Ferman, the facts relevant to her statements to

the press are the same as those that must be proved to entitle

Plaintiffs to relief on their § 1983 claim for making false

public statements.  Therefore, the defamation claims are part of

the same case or controversy as the § 1983 claims.  As such, this

Court may exercise supplemental jurisdiction over the state law

defamation claims.

     *E.    False Light Invasion of Privacy*

In Count XII, Plaintiffs assert a claim for false light

invasion of privacy against Defendant Ferman.  To recover on a

claim for false light invasion of privacy under Pennsylvania law,

Plaintiffs must prove that Defendant Ferman publicized private

facts about Plaintiffs that would be highly offensive to a

reasonable person and are not of legitimate concern to the

public.  Strickland v. Univ. of Scranton, 700 A.2d 979, 987 (Pa.

Super. Ct. 1997).  The set of facts supporting this claim is

substantially similar to those supporting the § 1983 claim

against Defendant Ferman for making false public statements.

Plaintiffs will be required to go into detail regarding both the

exact statements made by Defendant Ferman as well as the

publication of these statements in support of their due process

claim.  Therefore, this claim is part of the same case or

controversy as the § 1983 claim for making false public

statements.  As such, this Court may exercise supplemental

jurisdiction over Count XII.

    *F.   Commercial Disparagement*

    In Count XIII, Plaintiffs assert a claim for commercial

disparagement against Defendants Salem, Salem's attorneys, and

Defendant Ferman.  Under Pennsylvania law, commercial

disparagement, or the publication of a disparaging statement

concerning the business of another, is actionable where the

following is true:

> (1) the statement is false; (2) the publisher
> either intends the publication to cause pecuniary
> loss or reasonably should recognize that
> publication will result in pecuniary loss; (3)
> pecuniary loss does in fact result; and (4) the
> publisher either knows that the statement is false
> or acts in reckless disregard of its truth or
> falsity.

<u>Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.</u>, 809 A.2d 243, 246 (Pa. 2002). Much like the false light invasion of privacy claims, the set of facts that must be proven in support of this claim is substantially similar to those supporting the § 1983 claim against Defendant Ferman for making false public statements. The facts that must be proven to recover on this claim are also relevant to the facts regarding Plaintiff Logan's allegedly unlawful arrest—specifically, the facts regarding the existence of probable cause. Because the probable-cause determination depends in large part on Defendant Salem's and the members of the Steering Committee's role in providing allegedly false evidence to Defendant Anders, the commercial disparagement claim is rightly part of the same case or controversy as the § 1983 claims. Therefore, this Court may exercise supplemental jurisdiction over Count XIII of the First Amended Complaint.

G. *Negligence*

In Count XIV, Plaintiffs assert a negligence claim against Defendants Salem and Salem's attorneys for failing to conduct a reasonable investigation into the factual and legal issues underlying their contract with Plaintiffs before making criminal accusations to Defendant Anders. To prevail on a negligence claim under Pennsylvania law, the plaintiff must establish that the defendant had a duty to conform to a certain standard of

conduct, that the defendant breached this duty, and that this breach caused an injury to the plaintiff.  Macina v. McAdams, 421 A.2d 432, 434 (Pa. Super. Ct. 1980).  Once again, the facts needed to resolve the negligence claim are closely tied to those that are needed to resolve the issue regarding the existence of probable cause in the § 1983 unlawful arrest claim.  The facts relevant to the § 1983 claim for making false public statements also overlap with the facts relevant to satisfying the causation and damages elements of the negligence claim.  Specifically, Plaintiffs must show that their damaged reputation was the direct result of losing their ability to pursue their chosen profession. In other words, Plaintiffs must prove that the criminal charges and the public statements about such charges were the legal cause of Plaintiffs' business failures, thus entitling them to recover damages.  This burden of proof is substantially the same for the negligence claim as it is for the § 1983 claims.  As such, Count XIV is rightfully part of the same case or controversy as Counts I and II.  Therefore, this Court may exercise supplemental jurisdiction over Count XIV.

   *H.   Violation of the Dragonetti Act*

   In Count XV, Plaintiffs assert a claim for the violation of 42 Pa. Cons. Stat. Ann. § 8351, otherwise known as the Dragonetti Act.  To recover in a Dragonetti action, Plaintiffs "must show

that [they] prevailed in the underlying action, that the

Dragonetti defendants acted in a grossly negligent manner *or*

without probable cause in pursuing the underlying action, *and*

that [the defendant] had an improper purpose in doing so."

Schimdt v. Currie, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005).  The

facts supporting the Plaintiffs' Dragonetti action are

substantially the same as those supporting Plaintiffs' § 1983

unlawful arrest action, particularly the facts needed to resolve

the issue regarding the existence of probable cause.  As such,

the factual overlap of the Dragonetti claim with the § 1983

unlawful arrest claim supports the notion that they are part of

the same case or controversy.  Therefore, this Court has

statutory authority to exercise supplemental jurisdiction over

Count XV.

*4.  Motion to Strike*

Defendants' Motion to Strike Plaintiffs' claims for a

specific dollar amount in their *ad damnum* clause is granted.

Local Rule of Civil Procedure 5.1.1 provides that "[n]o pleading

asserting a claim for unliquidated damages shall contain any

allegations as to the specific dollar amount claimed."  Local

Rule 5.1.1 is properly enforced by way of a motion to strike

pursuant to Rule 12(f).  See Jodek Charitable Trust, R.A. v.

Vertical Net Inc., 412 F. Supp. 2d 469, 484 (E.D. Pa. 2006)

(granting defendant's motion to strike plaintiff's claim for sixty million dollars ($60,000,000) from the *ad damnum* clause). Here, Plaintiffs' *ad damnum* clause requests an award of damages exceeding fifty million dollars ($50,000,000), thus violating Rule 5.1.1. As such, Defendants' Motion to Strike Plaintiffs' claim for a specific dollar amount is granted.

Defendants also request that we strike paragraphs fourteen (14) and fifteen (15) from the First Amended Complaint because Plaintiffs identify the Montgomery County District Attorney's Office and Montgomery County as defendants but make no claims against these parties. This Court may strike "any redundant, immaterial, impertinent, or scandalous matter" from the pleadings. Fed. R. Civ. P. 12(f). Plaintiffs argue that paragraphs fourteen (14) and fifteen (15) are essential to state a § 1983 claim, namely by showing that Defendants were acting under the color of state law while their alleged conduct deprived Plaintiffs of their rights. Indeed, paragraph fifteen (15) is pertinent to the state-actor requirement, as it establishes that Defendants were acting as employees or agents of the Montgomery County District Attorney's Office while engaging in the alleged conduct. However, paragraph fourteen (14), which identifies the Montgomery County District Attorney's Office as a defendant, is not pertinent to the state-actor requirement as it simply states

that the District Attorney's Office is a political subdivision of the Commonwealth of Pennsylvania. This conclusion can be drawn from various other paragraphs in the First Amended Complaint that properly do not identify the Montgomery County District Attorney's Office as a defendant. Because no claims are made against the Montgomery County District Attorney's Office, and because it is not needed to establish that Defendants Anders and Ferman were acting under the color of state law as employees of this office, Defendants' Motion to Strike paragraph fourteen (14) is granted.

## Conclusion

Defendants' Motion to Dismiss Plaintiffs' § 1983 claim for unlawful arrest must be denied because Defendant Anders is entitled to, at most, qualified immunity, and we must see all of the facts to determine whether Defendant Anders is entitled to this protection. Defendants' Motion to Dismiss Plaintiffs' § 1983 claim for making false statements is likewise denied because Plaintiffs have stated a claim that could satisfy the stigma-plus test, given that they allege both a deprivation of their ability to choose their chosen profession as well as damage to their reputation. Given that we have denied Defendants' Motion to Dismiss Plaintiffs' due process claims, we have statutory authority to exercise supplemental jurisdiction over Plaintiffs'

state law claims because these state law claims have sufficient factual overlap with Plaintiffs' § 1983 claims. However, Defendants' request that we strike Plaintiffs' *ad damnum* clause, which requests relief for a sum certain in violation of Local Rule 5.1.1, is granted, as is Defendants' request that we strike paragraph fourteen (14) in which Plaintiff names the Montgomery County District Attorney's Office as a defendant but fails to make any claims against it.