**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

WALTER J. LOGAN, JR. and     :
THE DELTA ALLIANCE, LLC,       :
                             :    CIVIL ACTION
          Plaintiffs,    :
                             :    No. 10-cv-0144
        vs.              :
                             :
SALEM BAPTIST CHURCH OF      :
JENKINTOWN, et al.,          :
                             :
          Defendants.    :

## MEMORANDUM AND ORDER

**Joyner, J.**                                        **August 17, 2010**

This case is before the Court on Defendant Salem Baptist
Church's Motion to Dismiss (Doc. No. 30) and Defendants Eastburn
& Gray, Leopold-Leventhal, and Jonas's Motion to Dismiss (Doc.
No. 32). For the reasons set forth in the attached Memorandum
the Motions will be GRANTED in part and DENIED in part.

## Factual Background[1]

Many of the facts of this case have already been presented
in this Court's Memorandum addressing Defendants Anders and
Ferman's Motion to Dismiss, and we will only provide a brief
summary of the facts here. Plaintiffs are Walter J. Logan and
his company, The Delta Alliance ("Delta"). Defendants are the
following: Salem Baptist Church of Jenkintown ("Salem"); the law

---

[1]In line with a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, all factual
allegations are viewed in the light most favorable to the non-moving party.
Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations
omitted).

firm Eastburn & Gray; Jane Leopold-Leventhal, who is an attorney at Eastburn & Gray and who represented Salem in its arbitration with Delta; Marc Jonas, who also is an attorney at Eastburn & Gray and who served as Salem's attorney for purposes of obtaining land use approvals from the Borough of Jenkintown; Mary Anders, who is a detective with the Montgomery County District Attorney's Office; and Risa Vetri Ferman, who is the Montgomery County District Attorney.

In October of 2003, Salem entered into a contract with Delta under which Delta agreed to act as an at-risk construction manager that would negotiate multiple contracts with subcontractors for both labor and materials to construct two buildings in Jenkintown, Pennsylvania. The parties' relationship did not go smoothly, however, as the construction experienced substantial delays and Salem fell behind in its payments to Delta by June 2007. In response to Delta's requests for payment, Salem terminated the contract. As a result, Delta filed a claim with the American Arbitration Association ("AAA") in July 2007, seeking to recover the payments owed as well as damages for wrongful termination of the contract. Salem cross-claimed that Delta had misappropriated payments received from Salem.

In the summer of 2008, Leopold-Leventhal and the Steering Committee for Salem met with detectives of the Montgomery County Detective Bureau, including Defendant Anders, to discuss the

possibility of criminally prosecuting Logan for his conduct in connection with the termination of Delta's contract with Salem. Following this meeting, Defendant Anders allegedly undertook a criminal investigation of Delta and Logan with respect to their performance of the contract. This investigation resulted in Logan being charged with theft by unlawful taking, theft by deception, theft by failure to make required disposition, deceptive business practices, misapplication of entrusted property, and securing the execution of documents by deception. Plaintiffs assert that this decision was based solely on the allegations made by the Steering Committee and Leopold-Leventhal and the pressure placed on the detectives by these parties. Plaintiffs further assert that Defendant Leopold-Leventhal drafted parts of the affidavit of probable cause that led to the issuance of Logan's arrest warrant on January 13, 2009. Finally, Plaintiffs allege that the criminal charges were orchestrated by the moving Defendants to pressure Plaintiffs into settling their claims in arbitration as well as to punish Plaintiffs for the project failure and the initiation of arbitration.

Plaintiffs bring a series of claims against Defendants in relation to the aftermath of the cancelled contract. Counts I, II, V, VIII, XI, and XII are brought against Defendants Anders and Ferman, whose Motion to Dismiss has already been considered by this Court. In Counts III and IV, Plaintiffs charge the

moving Defendants with common law malicious prosecution for their role in allegedly procuring the criminal prosecution of Logan. Counts VI and VII are brought for common law malicious abuse of process for the moving Defendants' role in using judicial proceedings for means other than that for which they were intended. Count IX is a claim for civil conspiracy, and is premised on Plaintiffs' claims for malicious prosecution and malicious abuse of process. Count X charges Defendants with defamation, and Count XIII brings charges of commercial disparagement. Count XIV accuses Defendants of negligence in relation to their conduct that led to the prosecution of Logan. Finally, Count XV brings a claim under the Dragonetti Act that substantially mirrors Plaintiffs' claims in Counts III and IV.

## Standard

Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a complaint if the plaintiff has failed to "state a claim on which relief can be granted." In evaluating a motion to dismiss, the court must take all well-pleaded factual allegations as true, but it is not required to blindly accept "a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 283, 286 (1986). Although a plaintiff is not required to plead detailed factual allegations, the complaint must include enough facts to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

4

555 (2007).

## Discussion

**Malicious Prosecution**

Common law malicious prosecution requires that the plaintiff demonstrate that proceedings were instituted against him without probable cause and with malice, and that the proceedings terminated in his favor. Kelley v. Gen. Teamsters, Chauffers, and Helpers, Local Union 249, 544 A.2d 940, 941 (Pa. 1988); see also Doherty v. Haverford Twp., 513 F. Supp. 2d 399, 409 (E.D. Pa. 2007). As a general matter, malice may be inferred from a lack of probable cause. Kelley, 544 A.2d at 941. The issue of probable cause is one for the court to decide, and it should be found to exist if there was a "reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." Miller v. Pa. R.R. Co., 89 A.2d 809, 809, 811-12 (Pa. 1952). A private citizen can only be liable for malicious prosecution if he procured the prosecution, which can be done in two ways: first, by giving knowingly false information to a public official that leads to the initiation of proceedings; and second, by requesting or pressuring a public official in such a way that the desire of the private individual is the determining factor in the initiation of the proceedings. Hess v. Lancaster County, 514 A.2d 681, 683 (Pa. Commw. Ct.

1986).  Importantly, this cause of action is not regarded with favor by the Pennsylvania courts, and is generally narrowly construed.  <u>Kelley</u>, 544 A.2d at 942.

First, all of the moving Defendants are private citizens, and can only be held liable for malicious prosecution if they procured the initiation of proceedings.  Although Plaintiffs have met that burden with respect to Defendants Salem, Leopold-Leventhal, and Eastburn & Gray, they have failed to do so for Defendant Jonas.  Plaintiffs' Amended Complaint states that it was due to the pressure placed on Defendant Anders at the meeting between Anders, Salem's Steering Committee, and Leopold-Leventhal that Plaintiff was charged in a criminal case.  The Amended Complaint also states that at this meeting at least some of Defendants provided erroneous information to Defendant Anders. Although at trial Plaintiffs will be required to prove either that this pressure was the determining factor in the filing of charges or that the information that was provided was knowingly false, at this stage of the proceedings Plaintiffs have adequately pled that the Steering Committee and Leopold-Leventhal, acting as agents for Salem and Eastburn & Gray respectively, procured Plaintiff's prosecution.  The Amended Complaint, however, makes no mention of Defendant Jonas in relation to this charge, other than that he represented Delta in a tangentially related matter.  As he is not a public official

and there are no allegations in the Amended Complaint that he either pressured any public official or provided any false information, Plaintiffs have failed to state a claim against Defendant Jonas for malicious prosecution.

Turning to the remaining elements of malicious prosecution, Plaintiffs have pled that a suit was instituted against Logan and that the suit was terminated in his favor. The central issue at this point is whether the prosecution was procured without probable cause, as a lack of probable cause will allow this Court to infer the existence of malice. Although much of the discussion of probable cause, or lack thereof, is focused on Defendant Anders, for the purposes of the present Motion, we must examine whether Salem and Leopold-Leventhal had probable cause to procure the prosecution. Plaintiffs' Amended Complaint is rather sparse on this issue, but it does allege that Defendants made knowingly false statements to procure Logan's prosecution, and if the accusations were known to be false, then Defendants simply cannot be described as acting with probable cause. Further, it is a reasonable inference from Plaintiffs' Amended Complaint that any pressure that was placed on Anders to initiate prosecution was done without probable cause to believe that any criminal violation had actually occurred; according to Plaintiffs' Amended Complaint the reason for this pressure was not a belief that Logan had violated any laws, but a desire to impact the

arbitration proceedings and to embarrass Logan.  Plaintiffs have,

therefore, pled facts sufficient to establish every element of

malicious prosecution, and we will decline to dismiss Counts III

or IV except as to Defendant Jonas.

**Abuse of Process**

Common law abuse of process is the "use of legal process

against another 'primarily to accomplish a purpose for which it

is not designated.'"  Rosen v. Am. Bank of Rolla 627 A.2d 190,

192 (Pa. Super. Ct. 1993) (quoting Restatement (Second) of Torts

§ 682).  A party seeking to bring this claim must demonstrate

that the defendant used a legal process against the plaintiff,

that it was used primarily to accomplish a purpose other than

that for which the process was intended, and that the plaintiff

was harmed.  Id.  Importantly, there is a distinction between

abuse of legal process and malicious prosecution; the former

deals with abuse after the litigation has begun, while the latter

is meant to address the improper initiation of a suit.  Rosen,

627 A.2d at 192; McGee v. Feege, 535 A.2d 1020, 1022 (Pa. 1987).

In reference to this charge, Plaintiffs have stated that the

moving Defendants contacted the District Attorney's Office with

the intent of procuring and maintaining the initiation of

proceedings against Logan for the sole purpose of harassing and

embarrassing Plaintiffs.  Plaintiffs do not, however, point to

any process that Defendants abused, other than the "process" of

litigation in general.  Instead, in their response in opposition to the Motions to Dismiss, Plaintiffs assert that the initiation of litigation is a process that may be abused and give rise to the tort of abuse of process.  The Pennsylvania Supreme Court, however, has explicitly held otherwise, and Plaintiffs' failure to cite a process after the initiation of litigation that has been abused is fatal to their claim.  We will, therefore, dismiss Counts VI and VII.

**Civil Conspiracy**

A conspiracy requires an agreement between two or more individuals either to do an unlawful act or to perform a lawful act in an unlawful way.  Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 159 (3d Cir. 1988).  To bring a claim for civil conspiracy under Pennsylvania law, the plaintiff must demonstrate the existence of a conspiracy as well as an underlying civil tort that formed the basis of the conspiracy. Nix v. Temple Univ. of the Commonwealth Sys. of Higher Educ., 596 A.2d 1132, 1157 (Pa. Super. Ct. 1991).  In addition, the plaintiff must show proof that the conspirators intended to injure the plaintiff and that the defendants took an overt act in furtherance of the conspiracy.  Petula v. Mellody, 588 A.2d 103, 107 (Pa. Commw. Ct. 1991).

In the present case, as discussed above, Plaintiffs have adequately pled a cause of action for malicious prosecution

against all of the moving Defendants other than Defendant Jonas,
and can, therefore, potentially maintain a claim for civil
conspiracy against these Defendants should they meet the other
requirements.  Plaintiffs have pled that Defendants undertook the
overt act of meeting with Defendant Anders to initiate the
prosecution, and have asserted that Defendant Leopold-Leventhal
undertook the overt act of drafting portions of the affidavit of
probable cause.  Further, Plaintiffs have pled that there was an
intent to injure included in this conspiracy.  Specifically,
Plaintiffs assert that Defendants acted in a way that would
embarrass and punish Plaintiffs for bringing their contract
claims to arbitration as well as that would pressure Plaintiffs
into settling those claims for less than full compensation.
Finally, Plaintiffs assert that they have suffered embarrassment,
a harm to their reputation, and the loss of business
opportunities as a result of this conspiracy.  Plaintiffs,
therefore, have pled all of the elements of a civil conspiracy
claim against all of the moving Defendants other than Jonas.

Defendants assert, however, that they are protected by the
intra-corporate conspiracy doctrine.  Pennsylvania has adopted,
and applied to the attorney-client relationship, the intra-
corporate conspiracy doctrine, under which an attorney cannot be
charged with conspiracy based on agreements forged in the
attorney-client relationship.  Evans v. Chichester Sch. Dist.,

533 F. Supp. 2d 523, 529 (E.D. Pa. 2008).  This doctrine still

applies even if the attorney was not solely motivated by an

interest in representing his client, so long as he still was

acting within the scope of the representation.  Heffernan v.

Hunter, 189 F.3d 405, 413 (3d Cir. 1999).

Although the intra-corporate conspiracy doctrine does

potentially apply, it does not provide grounds to grant a motion

to dismiss.  The intra-corporate conspiracy doctrine is a defense

that will negate the existence of a conspiracy only if the

actions taken were within the context of the attorney-client

relationship.  It is certainly plausible, however, that Salem and

Leopold-Leventhal were not acting only within the bounds of the

attorney-client relationship, and that they were also involved in

a larger conspiracy with Defendant Anders as well.  As the intra-

corporate conspiracy doctrine is both a defense and requires a

factual inquiry, it is inappropriate to resolve at this stage of

the proceedings.  In order to be ultimately successful on the

claim, Plaintiffs will have to demonstrate that the actions taken

by Defendants in this case were outside the attorney-client

relationship.  We will not, however, prevent Plaintiffs from

having an opportunity to make such a showing.

Finally, Defendants assert that the Noerr-Pennington

doctrine bars the charge for conspiracy.  The Noerr-Pennington

doctrine prevents an individual from being held liable for

exercising his First Amendment right to petition the government. Although the doctrine first developed in the context of antitrust cases, the Third Circuit as well as the Supreme Court have applied it to the area of civil conspiracies as well. See Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 159 (3d Cir. 2001) (detailing the extension of the Noerr-Pennington doctrine). The doctrine covers more than petitions for legislative action, and also protects an individual who brings a claim in the judicial system. Byers v. Intuit, Inc., 600 F.3d 286, 298 (3d Cir. 2010). The protection does not extend, however, to instances where the alleged petitioning is merely a "sham" to cover attempts to interfere in the business relationships of another. E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961). Importantly, the Noerr-Pennington doctrine confers immunity from liability, but it does not confer immunity from suit. Robinson v. Hartzell Propeller, Inc., 454 F.3d 163, 171 (3d Cir. 2006).

As with the intra-corporate conspiracy doctrine, the Noerr-Pennington doctrine may potentially provide a valid affirmative defense for Defendants at a later stage of the proceedings, but it does not provide grounds to dismiss Plaintiffs' allegations at this point. Indeed, if Plaintiffs successfully prove their case for malicious prosecution, the Noerr-Pennington doctrine would not provide a successful defense, as Plaintiffs will have

12

essentially proven that the sham exception applies. Regardless of its application, however, the <u>Noerr-Pennington</u> doctrine does not provide immunity from suit, and, rather, is a defense that requires factual determinations that cannot appropriately be made at this stage. We will, therefore, deny Defendants' Motions to Dismiss Count IX, except as to Defendant Jonas.

**Defamation and Commercial Disparagement**

A plaintiff bringing a claim for defamation must prove the defamatory nature of the statement, the publication of the statement, that the published statement refers to the plaintiff, that the person to whom the communication was published understands the defamatory nature of the statement, and that the plaintiff was injured by the statement. <u>Petula</u>, 588 A.2d at 106-07; <u>see also</u> 42 Pa. Cons. Stat. Ann. § 8343 (West 2007). "Communications are defamatory if they tend to harm an individual's reputation in such a way as to lower that individual in the eyes of the community or to discourage third persons from associating or dealing with him or her." <u>Petula</u>, 588 A.2d at 108. A defamation claim should not be dismissed unless the communication is incapable of having a defamatory meaning. <u>Id.</u> Similarly, commercial disparagement requires that the defendant make a false statement that he either intends to cause pecuniary harm or that he should recognize will do so, that the loss actually resulted, and that the publisher knew that the statement

13

was false or acted with reckless disregard as to its falsity.
Zerpol Corp. v. DMP Corp., 561 F. Supp. 404, 409 (E.D. Pa. 1983).

Before contesting the sufficiency of Plaintiffs'
allegations, Defendants raise two defenses:  first, all moving
Defendants assert that the statute of limitations has run; and
second, Defendants Eastburn & Gray, Leopold-Leventhal, and Jonas
contend that all of the statements alleged in this case are
protected by the absolute judicial privilege.  Looking first at
the statute of limitations, Pennsylvania has a one year statute
of limitations for any claims based on libel or slander, 42 Pa.
Cons. Stat. Ann. § 5523, and the same is applied to claims for
commercial disparagement.  Pro Golf Mfg., Inc. v. Tribune Review
Newspaper Co., 809 A.2d 243, 246 (Pa. 2002).  The general rule
for statutes of limitations is that they "begin[] to run as soon
as the right to institute and maintain a suit arises; lack of
knowledge, mistake or misunderstanding do not toll the running of
the statute of limitations."  Pocono Int'l Raceway, Inc. v.
Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983).  In
defamation cases, the claim accrues at the time that the
defamatory statements are published.  Evans v. Phila. Newspapers,
Inc., 1991 WL 1011010, at *29 (Ct. C.P. Phila. County Feb. 11,
1991).

In the present case, Plaintiffs assert that the defamatory
statements were made in connection with the meeting held between

14

Salem's Steering Committee, Leopold-Leventhal, and Anders in the summer of 2008. These statements are alleged to have resulted in the issuance of an arrest warrant for Plaintiff Logan on January 13, 2009. Plaintiffs then filed suit in this Court on January 12, 2010, and an Amended Complaint was filed on May 17, 2010. As noted above, however, the date of publication is key for statute of limitations calculations relating to defamation.[2] As the statements were made at some point in 2008, and the instant action was not filed until 2010, the statute of limitations has expired on Plaintiffs' claims for defamation and commercial disparagement. It is clear from the face of Plaintiffs' Amended Complaint that the statute of limitations has run, and these claims will be dismissed.

As we have concluded that the statute of limitations has run on Plaintiff's claims for defamation and commercial disparagement, we need not reach the issue of judicial immunity. Count X shall be dismissed in its entirety, and Count XIII shall

---

[2]Plaintiffs assert that no harm came from the statements until the issuance of an arrest warrant, and that, therefore, they had no cause of action until January 13, 2009. This, however, only reinforces our decision to dismiss the claims for defamation and commercial disparagement. The heart of these actions is that the statements themselves caused harm to the plaintiff, and not that the statements set in course a chain of events that eventually resulted in harm to plaintiffs. To the extent that these statements led to the inappropriate prosecution of Plaintiff, he can maintain an action for malicious prosecution, as outlined above. Insofar as Plaintiffs assert that the statements caused no harm until the issuance of the arrest warrant, it was not the statements that harmed Plaintiff's reputation, but the arrest warrant. This, however, does not give Plaintiffs a right to maintain an action for defamation or commercial disparagement.

be dismissed as to all of the moving Defendants.

**Negligence**

To prevail on a negligence claim under Pennsylvania law, the plaintiff must establish that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached this duty, and that this breach caused an injury to the plaintiff. Macina v. McAdams, 421 A.2d 432, 434 (Pa. Super. Ct. 1980). In determining whether a duty exists, the court should look to the relationship between the parties, whether the actor's conduct has any social utility, the nature of the risk that was created and the foreseeability of harm resulting, the societal consequences of imposing a duty, and the overall public interest. Atcovitz v. Gulph Mills Tennis Club, Inc., 812 A.2d 1218, 1223 (Pa. 2002); Althaus v. Cohen, 756 A.2d 1166, 1169 (Pa. 2000).

In this case, Plaintiffs have failed to state a cognizable duty, and their negligence claim must fail. Plaintiffs assert that Defendants had a duty to reasonably investigate the facts before making accusations to the District Attorney's Office. Plaintiffs cite no case in support of such a duty existing, and a consideration of the factors enumerated above does not convince this Court that one should be imposed. First, the relationship between the moving Defendants and Plaintiffs was one between private citizens, some of whom were parties to a contract. This relationship is not one that generally forms the basis of a broad

16

tort duty between the parties, and instead is a relationship that is generally governed by contract law. Second, although in this case the accusations did not lead to a conviction, there is social utility in having private individuals file complaints with the appropriate criminal authorities without requiring those individuals to first undertake an independent investigation. Further, any risk of harm is mitigated by the intervening presence of an independent government actor. Although Plaintiffs allege that this intervening actor did not protect against harm in this case, as a general matter, we believe that the involvement of trained officials in deciding whether to act upon the information provided by a private citizen substantially decreases any risk of harm that is created by the actions of the accuser. Fourth, the consequences of imposing a duty in this case would be either to discourage private citizens from contacting law enforcement officials in an effort to report suspected criminal activity or to encourage private citizens to act outside of official channels in investigating other private citizens. Neither of these is even remotely desirable. For similar reasons, we also do not think that it would be in the overall public interest to impose a duty on private individuals to investigate the factual accuracy of their claims before filing a report with a detective.

Given that none of the factors to be considered in

determining the existence of a duty support the creation of one

and that Plaintiffs have cited no case in which a duty was

imposed to reasonably investigate facts before contacting

detectives, we find that the moving Defendants owed no tort duty

to Plaintiffs.  In the absence of a duty, Plaintiffs cannot

maintain a claim for negligence, and Count XIV is dismissed.

**Dragonetti Act**

The Dragonetti Act is a codification of the common law tort

of wrongful use of civil proceedings.  Ciolli v. Iravani, 625 F.

Supp. 2d 276, 293 (E.D. Pa. 2009).  It allows suit to be brought

against a "person who takes part in the procurement, initiation

or continuation of civil proceedings" if the person acts "in a

grossly negligent manner or without probable cause and primarily

for a purpose other than that of securing . . . adjudication of

the claim."  42 Pa. Cons. Stat. Ann. § 8351(a)(1).  In order to

state a claim for a violation of the Dragonetti Act, a plaintiff

must also demonstrate that the proceedings brought against him

were terminated in his favor.  Id. § 8351(a)(2).  Finally, an

improper purpose can be inferred if the action is filed without

probable cause, and the initiation of a civil suit to force an

unrelated settlement is an oft-cited example of an improper

purpose.  Ciolli, 625 F. Supp. 2d at 295.

For similar reasons as Plaintiffs have stated a claim for

malicious prosecution, they have also stated a claim for a

violation of the Dragonetti Act against all of the moving Defendants other than Defendant Jonas.  Plaintiffs have alleged that Defendants acted to procure Plaintiff's prosecution, that this was done without probable cause, and that it was done for the purpose of forcing a settlement in an unrelated case.  In addition, although Defendants Eastburn & Gray, Leopold-Leventhal, and Jonas assert otherwise, the prior criminal proceeding was terminated in Plaintiff's favor.  The focus is not on the result of a preliminary ex parte hearing, but the ultimate outcome of the case.  As the case was terminated in Plaintiff's favor, he is eligible to bring a claim under the Dragonetti Act.  Other than as to Defendant Jonas, therefore, Defendants' Motion to Dismiss is denied as to Count XV.

### Conclusion

Plaintiffs have failed to state a claim against Defendant Jonas on any of the claims in their Amended Complaint, and all claims against him shall be dismissed.  As to the remaining Defendants, Plaintiffs have adequately stated a claim for malicious prosecution, and we will decline to dismiss Counts III and IV.  Plaintiffs have not, however, stated a claim for abuse of process because there is no allegation that Defendants perverted the process after the charges were filed, and Counts VI and VII will be dismissed.  As Plaintiffs' claims for malicious prosecution have not been dismissed, we will also decline to

dismiss Count IX for civil conspiracy.  Counts X and XIII for defamation and commercial disparagement will be dismissed as to all moving Defendants both because the statute of limitations has run on these claims and because Plaintiffs have not pled that they were injured by the statements themselves.  Count XIV, which is brought for negligence, will also be dismissed in its entirety as Plaintiffs have failed to state a cognizable duty.  Finally, Plaintiffs have stated a claim for violation of the Dragonetti Act, and Count XV will not be dismissed.